On December 13, 1940, the following joint petition was filed and submitted to the District Judge by Ira B. Scott and the Caddo Parish School Board:
"1. That on or about the 8th day of July, 1940, and prior thereto, petitioner, Ira B. Scott, was in the employ of the Caddo Parish School Board of Louisiana, engaged in washing and cleaning windows in the Claiborne School Building in the city of Shreveport, State of Louisiana. That petitioner worked six days per week at a wage of $1.50 per day, or $9.00 per week.
"2. Petitioner, Ira B. Scott, avers that while performing his work and duties in connection with his said employment on or about the 8th day of July, 1940, he fell from a scaffold on which he was working to the ground, a distance of 15 feet or 20 feet and received a broken right hip and a fractured right wrist, temporarily disabling him to do work of any reasonable character.
"3. That petitioner has almost completely recovered from his injuries and is advised by competent physicians that he will be completely well and able to earn a living before the 4th day of February, 1941.
"4. That petitioner, the Caddo Parish School Board, admits the employment of Ira B. Scott and admits that he was injured as alleged in Article 2 of this petition, but denies that the said Ira B. Scott is at this time suffering from the effects of said injury and avers that he has completely recovered therefrom and is now able to earn a living, but that for the purpose of compromise and settlement all parties hereto agree that Ira B. Scott will be disabled for a period of 31 weeks, from July 8, 1940, until February 8, 1941, but that thereafter he will be fully recovered and able to return to work.
"5. That petitioner, the Caddo Parish School Board, avers that it has already paid the said Ira B. Scott the sum of $112.80 and is willing to pay him in full settlement and compromise of any liability for any and all injuries received by him on account of said accident the further sum of $73.20, making a total of $186.00 for thirty-one weeks' disability at $6.00 per week, which sum, $73.20, should this settlement and compromise be approved by the court, will be paid as a lump sum settlement without discount.
"6. Petitioner, the Caddo Parish School Board, avers that all medical and hospital expenses incurred in connection with this case have been paid, in full.
"Wherefore, petitioners pray that said lump sum settlement and compromise as set forth above and in the attached agreement and release be approved by this court, and that the Caddo Parish School Board of Caddo Parish, Louisiana, through its proper officers, be authorized to pay to the said Ira B. Scott the sum of $73.20 in full and final settlement and compromise of all liability of the Caddo Parish School Board for all compensation due the said Ira B. Scott under the Louisiana Workmen's Compensation Act, by reason of said accident or injury, or any aggravation, complications, and developments thereof suffered by the said Ira B. Scott in the course of his employment on or about July 8, 1940. Further prays for general and equitable relief, and for such orders and decrees as may be necessary herein."
The petition was signed by C.B. Prothro, attorney for Scott, and James U. Galloway, attorney for the School Board. Attached to the petition was the following affidavit signed by Scott and the President of the Caddo Parish School Board:
"State of Louisiana
"Parish of Caddo
"Before the undersigned authority, came and appeared Ira B. Scott, a resident of Shreveport, Caddo Parish, Louisiana, and the Caddo Parish School Board of Louisiana, herein represented by its duly qualified officers, who declare that they entered into the following agreement and release, to-wit: that
"Whereas, the said Ira B. Scott was injured on or about the 8th day of July, 1940, while in the employ of the Caddo Parish School Board, engaged in washing and cleaning windows at the Claiborne Avenue School in the City of Shreveport, Louisiana, said injuries being more fully shown in the petition to which this agreement is attached; and *Page 808 
"Whereas, the said Ira B. Scott has been examined by competent physicians who find that he has totally recovered from his injuries; and
"Whereas, the said Ira B. Scott and the Caddo Parish School Board desire to settle and compromise the compensation claim which the said Ira B. Scott has against the said School Board.
"Now, therefore, in consideration of the sum of $73.20 paid to the said Ira B. Scott by the said Caddo Parish School Board, the said Ira B. Scott does hereby release said Caddo Parish School Board from any and all liability for any injuries which he received as a fall from a scaffold at the Claiborne Avenue School, Shreveport, Louisiana, on or about the 8th day of July, 1940, said sum being in full and final settlement of all liability of said employer for any and all compensation to said employee, Ira B. Scott, by reason of said accident and injury and any aggravations and complications and developments thereof suffered by the said Ira B. Scott in the course of his employment on or about the 8th day of July, 1940.
"Thus done and signed in the presence of the undersigned competent witnesses on this the 7th day of December, 1940."
Acting on said documents the District Judge rendered the following opinion:
"In the above and entitled cause, considering the petition and written agreement filed therewith, the injured employee not being present or examined by the court, the law and the evidence being in favor thereof, —
"It is ordered, adjudged and decreed that the settlement agreed upon by and between petitioners is hereby approved by the Court, and in conformity to said agreement of petitioners, there be judgment in favor of Ira B. Scott and against the Caddo Parish School Board in the full sum of $186.00, in full and final settlement of all compensation due the petitioner, Ira B. Scott, by reason of an injury received in an accident on July 8, 1940, while in the employ of said Caddo Parish School Board, including aggravations, complications and developments thereof. That the said Caddo Parish School Board is due a credit of $112.80 on this judgment, said sum having been heretofore paid to the said Ira B. Scott; the amount therefore to be paid in cash to the said Ira B. Scott, $186.00 less $112.80, or $73.20.
"Thus done, read and signed in open Court on this the 13th day of December, 1940."
On October 17, 1941, Ira B. Scott filed this suit against the Caddo Parish School Board in which he seeks to set aside the compromise judgment rendered on December 13, 1940, and to recover compensation for total and permanent disability at a rate of one and one-half times the amount originally due. He made the following allegations:
"2. That the said Caddo Parish School Board has been duly authorized by law to acquire school sites, erect school buildings, remodel and renovate same and to contract with and hire individuals for the purpose of constructing, remodeling, renovating and painting and otherwise conducting and supervising work of such employees engaged in any of such businesses or functions and that as such it is liable to its employees when injured in the course of their employment with said Board, under the provisions of the Workmen's Compensation Law of Louisiana.
"3. That on or about July 8, 1940 and prior thereto petitioner was in the employ of the defendant, Caddo Parish School Board, which defendant Board had employed petitioner to wash and clean windows in and about the Claiborne School building in the City of Shreveport, Louisiana, and that his duties were hazardous in nature and that his wage was $1.50 per day or $9.00 per week.
"4. That on the date as hereinabove shown and while in the line of his duties, as aforesaid, for the defendant, Caddo Parish School Board, while he was cleaning windows on a scaffold which was a distance of about 30 feet from the ground, he fell from such scaffold and in falling struck the concrete pavement below and as the result of this fall he sustained a fracture of the skull, linear in type with no depression, fracture of ischium, radiating into the ascetablum, also fracture of the right wrist, and that this fall and the injuries sustained rendered him totally disabled and he has remained totally disabled from such injuries since.
"5. Petitioner shows that he was sent to Tri-State Sanitarium for treatment for his injuries and was treated there for a time as will be more fully shown on the trial of this cause and that he attempted to and did secure a position as a teacher on *Page 809 
or about October 30, 1940, in a school located at Morgan City, St. Mary Parish, Louisiana, and did teach in said school for a monthly salary of $42.50 for a period of seven months, but that at all times while he was teaching, as a result of the fractured skull which he had sustained, he suffered severe headaches, causing him to be incompetent to teach and that he was forced to desist completely from any further efforts as a teacher or any other occupation for wage or profit due to his condition arising out of the injuries above recited.
"6. Petitioner shows that in truth and in fact he has been unable to do any work of a reasonable character whatsoever since he sustained the above recited injuries and that at all times he has suffered severe headaches and pains and is very nervous and excitable and that he is still unable to do any work for wage or profit.
"7. Petitioner shows that on or about December 7, 1940, the defendant, Caddo Parish School Board, through its attorney, James U. Galloway, and petitioner's then attorney, C.B. Prothro, prepared a joint petition wherein it was recited that petitioner had received a broken right hip and a fractured right wrist, temporarily disabling him and wherein it is further recited that the petitioner had almost completely recovered from his injuries and that in such petition it is stated that petitioner would be completely well and able to earn a living before the 4th of February, 1941; it is further admitted in the said petition the employment of petitioner and that he was injured as alleged in the petition but denied that petitioner was then suffering from any effect of his injuries on December 7, 1940, and it was claimed that he was able to earn a living and that he was entitled to compensation payment for a period of 31 weeks from July 8, 1940, until February 8, 1941, when on the latter date it was anticipated that he would be able to return to work.
"8. Petitioner further shows that in the said petition dated December 8, 1940, it was there alleged that petitioner had already been paid $112.80 and that as a full compensation settlement it was therein alleged that he would be entitled to a further payment of $73.20, making a total of $186.00 compensation payments, which payments were for 31 weeks' disability at $6.00 per week; this sum was paid petitioner as a lump sum settlement without discount; the defendant further alleged that it had already paid all medical and hospital expenses incurred in connection with petitioner's injuries; that at the time of the settlement your petitioner was then living at Morgan City, Louisiana, and that the joint petition was sent him by mail and signed before a notary public at Morgan City, Louisiana, and that later the final payment of $73.20 was sent to him by mail to Morgan City, Louisiana.
"9. Petitioner shows that at the time he accepted the lump sum settlement he was without funds, totally disabled, in need of medical attention and that he was without benefit of counsel, since his attorney was not present to advise him and that when he received this check for $73.20 he was under the impression that such payment was only a partial payment for compensation due him; that when the attending physician of your petitioner last treated him before your petitioner left for Morgan City, Louisiana, namely; on or about August 30, 1940, that this physician informed your petitioner that he was apparently recovered from his injuries and no further treatment was necessary; that after this last treatment he did not have the benefit of any medical treatment whatsoever until on or about July 15, 1941, when he again visited his physician, who examined him and found that he was then totally and permanently disabled, all as a result of the injuries that he had previously sustained, and that this physician then informed him that he was suffering from increased spinal fluid pressure and that spinal punctures were necessary and that it would be indefinite as to when petitioner would be normal again.
"10. Your petitioner shows that in the petition of December 7, 1940, which purported to be a final settlement for all compensation claims due your petitioner, the attorneys failed to allege that your petitioner had sustained a linear fracture of the skull in the right temporal region just lateral to the frontal sinus upward, backward and downward for about 1 1/2 inches and no reference whatever was made to such fracture, as heretofore alleged that he had sustained; further that the judgment which was signed by His Honor, E.P. Mills, shows on the face of the judgment in suit No. 81,277, entitled Ira B. Scott v. Caddo Parish School Board, signed on December 13, 1940, that the injured employee was not present or *Page 810 
examined by the Court and that as a result your petitioner was never examined by Judge Mills nor ever informed that the settlement was a full, final and complete settlement for his injuries.
"11. That as a result of the injuries sustained petitioner has been, since the date of said injuries, totally and permanently disabled and that when he received the $73.20 sent him by mail to Morgan City, Louisiana, which amount was received after the rendition and signing of the judgment; that he was without benefit of counsel, medical advice, nor was he examined by the District Judge nor was he informed that the settlement was a full and final settlement and that such settlement as he received was based upon a simple speculation as to the extent of petitioner's disability and that the attorneys who prepared the joint petition did not even take into consideration that he had sustained a fracture of the skull nor did they realize the extent of his injuries or disability and that this simple speculation was a mere guess and that there was no other issue between petitioner and defendant, all as will be more fully shown by reference to suit No. 81,277, entitled Ira B. Scott v. Caddo Parish School Board, which suit is annexed hereto and made a part hereof by reference, and that the said settlement which was effected was contrary to the law of the State of Louisiana as made and provided in such cases.
"12. Petitioner shows that since the date of his injuries he has suffered severe pain, headaches and is nervous and excitable and as a result he is totally and permanently disabled and unable to earn a living or follow any trade or occupation for gain or profit and that he does now suffer such pain and severe headaches and from time to time must sustain spinal punctures, all of which causes him severe pain, weakness and physical incompetence, and all of which injuries and suffering have been caused by the injuries heretofore shown.
"13. That the judgment rendered in said suit No. 81,277 is contrary to law and is contrary to the statutes of this State and should be annulled, and petitioner should have judgment in his favor and against defendant, Caddo Parish School Board, for compensation at the rate of $9.00 per week, being 1 1/2 times his regular rate of compensation from July 8, 1940, for a period of 400 weeks, less the sum of $186.00 already paid, together with legal interest on each weekly installment from its maturity date until paid. * * *
"16. Petitioner shows that he has furnished the defendant copies of letters from his attending physician showing his present condition and that he is totally and permanently disabled as a result of the injuries sustained and that he has made amicable demand for the compensation payments due him, all in vain.
"Wherefore, petitioner prays that the Caddo Parish School Board, through its President, Wilbur C. Yearwood, be duly cited to appear and answer this petition and that, after due proceedings had, there be judgment in favor of petitioner and against the Caddo Parish School Board; that certain judgment rendered in suit No. 81,277, entitled Ira B. Scott v. Caddo Parish School Board, on the docket of this Honorable Court, rendered under date of December 13, 1940, be set aside and annulled and declared of no force or effect and that there now be judgment herein in favor of petitioner, Ira B. Scott, and against the defendant, Caddo Parish School Board, in the full sum of $9.00 per week for a period of 400 weeks, beginning July 8, 1940, less the sum of $186.00 already paid, together with 5% per annum interest on each past due installment from its maturity date until paid, and all cost of this suit.
"Further prays that he be permitted and authorized to litigate in this cause without the payment of cost, present or future, or be required to furnish bond for cost.
"Further prays that there be judgment herein condemning the defendant to pay petitioner's attorney fees of 20% or 1/5th of any amount recovered hereunder and that such sum should not exceed $1000.00 and that this attorney fee be recognized a part of any judgment rendered hereunder by this Court.
"Further prays for all necessary orders, general and equitable relief."
Defendant filed a plea of res judicata to plaintiff's suit. Plaintiff then filed a supplemental and amended petition in which he stated the purpose of the amended petition and made the following additional allegations:
"2. That in the original petition, herein filed by your petitioner, on the 16th day of October, 1941, he did not allege therein as clearly as he should have alleged in what manner he was imposed upon in the purported compromise settlement had *Page 811 
between himself and the defendant school board on December 13, 1940; that it is the intent and purpose of this supplemental petition to show definitely in what manner he was misled and the imposition and denial of his rights in the premises.
"3. Petitioner shows that he sustained, as a result of the fall as originally alleged, a fractured skull and other injuries; that the fractured skull was a condition that was known, of course, to the attending physician and that your petitioner was under the impression that such fact was also known to his attorney, Claude B. Prothro; but as a matter of fact, his attorney was never informed as to his having a fractured skull due to the injury sustained by himself on July 8, 1940, and that his then attorney has furnished him an affidavit showing his lack of such knowledge of such condition, which affidavit is attached hereto and made a part hereof.
"4. Petitioner shows that at the time of the purported settlement had with the defendant he sustained headaches from time to time and dizzy spells and that he relied on his attorney to inform him of what payments he should receive from the defendant; that at no time after the injury down to the date of the purported compromise settlement was he ever informed by his attorney or anyone else that the settlement offered him was a compromise settlement and in full discharge of his claim for compensation benefits; further, that he never informed his then attorney that he was completely recovered from his injuries and that allegation in the joint petition to this effect was merely allegation of his attorney and was not authorized by your petitioner.
"5. Petitioner shows that he was under the impression that the documents sent to him for his signature at Morgan City, Louisiana, required his signature for the sole purpose of receiving compensation benefits due him which had not been paid for some time prior to that date and he signed the petition as requested by his attorney in the letter written him by his attorney, which letter has now been filed in the record; that in truth and in fact he was totally and permanently disabled as a result of the injuries originally sustained, as more fully shown in the original petition herein and that at the time of the signing of the joint petition that as a result of the fracture of his skull, petitioner was not fully competent to read and understand the legal document and that he had no information from anyone as to this; that the settlement had and the petition jointly prepared by his attorney and the defendant's attorney was prepared solely by the attorneys, especially as far as your petitioner was concerned, without your petitioner having been consulted prior to its preparation and further, that his attorney prepared the petition and accepted settlement for him without knowledge of his having sustained a fractured skull; without knowledge of his then being totally and permanently disabled and that as a result of such lack of information, your petitioner's attorney drew the petition and accepted the benefits for him under such circumstances.
"6. Petitioner shows that at the time the purported compromise settlement was entered into by his then attorney and the defendant school board that there was not a valid dispute existing between himself and the defendant; that the principal injury which he had received originally was a fractured skull and that he was rendered totally and permanently disabled as a result of this injury and that he was so totally and permanently disabled at the time of the purported settlement in December, 1940; that the lump sum settlement entered into for the reasons herein before set forth is invalid for the reason that the lump sum settlement had was a lump sum settlement purely and simply which was discounted at a greater rate of interest than 8% per annum, contrary to subsection 9 of Section 8 of Act 20 of 1914, as amended by Act 242 of 1928; that the settlement had was purely speculative and a mere guess as to the possible date of recovery of your petitioner; and that petitioner is entitled to an award of all additional compensation, as provided by the Workmen's Compensation Act of Louisiana."
The affidavit of plaintiff's former attorney who handled the compromise is that at the time Scott employed him no mention was made of a head injury; that he had no knowledge of such an injury and if he had known of it he would not have insisted on or recommended the compromise settlement entered into.
Defendant filed a plea of res judicata to the suit after the amended petition was filed.
The record as made up and on which the lower court rendered judgment sustaining *Page 812 
the plea of res judicata contains, other than the pleadings and documents above quoted, a letter from plaintiff's attorney addressed to plaintiff at Morgan City, Louisiana, dated December 4, 1940, the contents of which are, "You will find enclosed petition and compromise agreement. You will find three lines on which you are to sign your name each of which is marked with an (x). Go before a Notary Public, sign and return to me at once."
Also a letter dated December 13, 1940, addressed to and signed by the same parties, the contents being as follows: "You will find enclosed check for $73.20. The Court costs amounted to $2.50 which sum I paid, you will, therefore, refund to me this amount of $2.50."
There are also two letters from Dr. J.R. Brown, one dated July 31, 1941, addressed to C.B. Prothro, attorney, which reads as follows:
"Dear Sir:
 "In re: Ira B. Scott-Caddo School Board
"The above named case came under my observation and treatment on 7/10/40, complaining that he fell off high ledge while at work and suffered a severe blow to temporal region on right side of head. Also complained of pain in right hip and forearm.
"Physical examination: Head and neck: There is a swollen area over right temporal region and ecchemosis of the right orbit. There is some blood escaping from right nostril. No hemorrhage noted from ears or pharynx. Chest: Lung fields clear, heart normal. No broken ribs noted. Abdomen: No pathology found. G.U. Tract negative. Bones and joints: Pain is noted in right hip on motion. Swelling and slight deformity of the right forearm. No glandular adenopathy noted. Reflexes normal.
"X-ray report on this case presents a non-depressed linear fracture traversing the right temporal region just lateral to the frontal sinus upward, backward and downward for about 1 1/2 inches. A linear fracture of the neck of the right ischium that radiates into the superior portion of the acetabulum and transverse non-displaced fracture of the ischium. A Barton's fracture of the right wrist with position and alinement satisfactory.
"Diagnosis: This patient presented a fracture of the skull, linear in type with no depression, fracture of ischium, radiating into the acetabulum, also fracture of right wrist.
"At no time was this patient unconscious and remained in the hospital from date of admission on 7/10/40 to 8/12/40, at which time he was able to walk out. He felt very good and at that time occasionally complained of headaches.
"Treatment used on this case was Sachs treatment, that of dehydration theraphy which we have found to be satisfactory.
"Several months after patient left hospital, a settlement was made with Insurance Company and School Board. At that time he had no complaints and stated he felt very satisfactory (what time settlement was made, I do not know).
"This patient returned again to my office for observation approximately two weeks ago, complaining he had a `funny feeling' in his head, and also stated that he taught school last year and that the Professor under whom he taught, made the statement that he did funny things and talked in a peculiar manner at times. Patient at this time did not seem to be perfectly lucid. His blood pressure was taken and found to be normal. Spinal fluid pressure was taken and reading was 360 Water Manometer. The normal for an individual is between 90 and 180, so this shows definitely that there is an increased spinal fluid pressure on the brain. Wassermann, both blood and spinal fluid, was entirely negative. We are forced to conclude that this patient is suffering from this increased spinal fluid pressure, resulting from injury acquired on 7/10/40. How long it will take this patient to recover from this cannot be accurately estimated, but feel that rest and quiet will be most beneficial to him with occasional taps to relieve pressure."
And one dated October 3, 1941, addressed to C.J. Cohn (Coen), plaintiff's present attorney, in which Dr. Brown stated plaintiff's condition at that time. It is as follows:
"The above named case has shown rather marked improvement under spinal punctures. The first spinal puncture reading was 360. The spinal fluid, of course, was withdrawn and brought down to normal. Subsequent spinal punctures revealed a decrease in pressure and three weeks ago *Page 813 
spinal puncture was made and no increased pressure was found.
"Yesterday spinal puncture was again made and pressure was found to be 130, which is only 10 points above normal, which might be classed as a high normal. Small amount of fluid was let out.
"Patient also claims that his mental processes have cleared up considerably and his head does not pain him as it did in the past. This does not mean that patient is well as yet, but he has decidedly improved and further observation will be necessary to continue his improvement."
The lower court rendered two opinions in this case, the original one being as follows:
"Plaintiff sues defendant to set aside a judgment of this Court dated December 13, 1940, approving a compromise settlement of plaintiff's claim for compensation under the Workmen's Compensation Act for additional compensation and recognition of the agreement for attorney's fees. Plaintiff makes a part of this suit the record in the compromise settlement matter. Defendant has filed a plea of res judicata on the ground that the prior judgment, as shown by the record of said case, definitely settled and adjudged all of plaintiff's claims against defendant. The matter is before the Court on this plea.
"Plaintiff was injured on July 8, 1940, while in the employ of defendant at a weekly wage of $9.00 and was paid compensation from date of injury at the rate of $6.00 per week, until a total of $112.80 was paid, or a period of 19 weeks approximately, or until say November 20, 1940. On October 30, 1940, plaintiff had left Shreveport and gone to Morgan City where, on that date, he became a teacher in the schools of that Parish at a salary of $42.50 per month — more than he was earning at the time of his injury — and there taught school for a term of seven months.
"On December 7, 1940, plaintiff, while at Morgan City, signed an agreement of compromise, which was later signed by defendant here, wherein it is recited that plaintiff had been examined by competent physicians who find that `he has totally recovered from his injuries' and that the parties agreed to settle and compromise the compensation claim against the said School Board, and that they had agreed upon the sum of $73.20. This agreement was attached to a petition prepared by plaintiff's attorney wherein it was alleged that plaintiff suffered an injury on July 8, 1940, resulting in a broken hip, and a fractured right wrist, temporarily disabling him from doing work of a reasonable character; and that plaintiff had almost completely recovered from his injuries and was advised by competent physicians that he would be completely well by February 4, 1941. The School Board on its part admitted the employment and admitted the injury but `denies that the said Ira B. Scott at this time is suffering from the effects of said injury and avers that he has completely recovered therefrom and is now able to earn a living'; but for the purpose of compromise and settlement all parties hereto agree that Ira B. Scott will be disabled for a period of 31 weeks or until February 8, 1940. On this joint petition and the annexed agreement the First District Court approved the settlement. The Presiding Judge interlined in the judgment that the plaintiff was not present or examined by the Court.
"Plaintiff further alleges in his petition presently before the Court that in addition to the injuries described in his petition of compromise he suffered a fracture of the skull and that, together with the other injuries received by him as set out in the agreement, `rendered him totally disabled and he has remained totally disabled from such injuries since'. That although he did teach school for seven months, due to severe headaches resulting from his fractured skull, he was incompetent to teach and since that term of school he has become forced to desist completely from any further efforts to teach school.
"Plaintiff further alleges that he was without the benefit of counsel, since his attorney was not present to advise him that the check for $73.20 was a final settlement; that when the attending physician last examined him on August 30, 1940, advised him that he had apparently recovered and from that time on, until July 15, 1941, and was therefore without the benefit of medical treatment or advice. There are no allegations of fraud and while plaintiff may not have been advised by a lawyer or a doctor, nevertheless no action on the part of defendant prevented plaintiff from consulting any one that he desired. All during the time he was more than 200 miles from defendant, engaged in teaching school. Under these circumstances one cannot infer that plaintiff was in any manner imposed upon, hence we pass to the real point *Page 814 
involved in the case as presented by counsel for plaintiff and defendant.
"It is plaintiff's contention that the recent decision by the Supreme Court in the case of Puchner v. Employer's Liability Assurance Corporation [198 La. 921, 5 So.2d 288] is determinative of the questions involved here because in the cited case the Court has definitely held that an employer and an employee cannot speculate upon the duration of the period of disability and that the present case is stronger for plaintiff than the Puchner case because it had been alleged that Puchner was drunk at the time of the injury. We do not see any similarity in the two cases. In the Puchner case, he had been disabled for approximately a year and had been paid compensation up to that time, when it was thought that Puchner would shortly be able to return to work and he was paid a lump sum of $500.00 in a lump sum for the settlement. The Court of Appeal [199 So. 799, 801] said this, at $20.00 per week would equal compensation for 25 weeks and that `it is obvious that at that time every one believed that, long before the expiration of six months, he would be back at work'. No time or agreement as to the length of time was made between the parties as to the length of the disability. All knew at the time the settlement was made that Puchner was not able to work.
"In the present case the plaintiff was actually at work at the time the settlement was made and there was an agreement as to the time the compensation was paid for, and that in a lump sum without discount.
"Counsel for plaintiff admits in argument that had the Court tried the present case on December 13, 1940, plaintiff's demands would have been rejected because on that date plaintiff was able to work and was working. The plaintiff and defendant in their joint petition set out a dispute as to disability, plaintiff contending that he would be disabled some two months longer and defendant contending that he had already recovered from his disability, and, in fact, plaintiff was then working, therefore, there was not only good grounds for a dispute but there was a dispute, but for the purpose of compromising defendant conceded some further disability sufficient to make up $73.20 further compensation. This is equivalent to saying on good authority, — `I owe you nothing, but to compromise and settle I'll pay you $73.20'. In the Puchner case the defendant paid for further disability and thought they were paying enough to cover his future disability, but they were in error. There was no dispute. In the present case there was a well founded dispute. We think the present case is governed by Musick v. Central Carbon Company,166 La. 355 [117 So. 277]; and Young v. Glynn [171 La. 371]131 So. 51.
"Biggs v. Libbey-Owens-Ford Glass Company [La.App.] 170 So. 273; [Id., La.App.] 173 So. 898; and [Id., La.App.] 178 So. 639, cited by plaintiff, has no application to the present suit. There plaintiff ceased to work and thereafter sued for compensation, which was disallowed by the trial Court, reversed by the Court of Appeal, and on rehearing on application of defendant, who alleged that plaintiff had been regularly employed for practically a year preceding the Court of Appeal's decision, the Court remanded the case for further proceedings, which case was then further heard in the Court below and the Court found that plaintiff's work was intermittent and that he had to work or starve, and concluded that plaintiff was entitled to compensation, which judgment was affirmed on appeal. The question involved there was whether plaintiff was in fact totally and permanently disabled at the time of the injury complained of. There was no question raised respecting a compromise settlement of the claim.
"For the reasons assigned there should be judgment sustaining the plea of res judicata."
 Addenda
"The Workmen's Compensation Act provides compensation payments for `disability to do work' of a reasonable character. The compromise herein sought to be set aside was not a compromise of `the length of a present disability' — an unknown factor — but a compromise of a dispute over the then present ability of plaintiff to do work of a reasonable character — a known factor."
A rehearing was granted and the Court reaffirmed its original finding in the following opinion:
"Plaintiff applies for a rehearing herein on the ground `that the Court found as a matter of fact that plaintiff herein was advised by counsel and represented by counsel at the time of the purported compromise settlement was made * * *'. The purport of our holding was that there was no *Page 815 
allegation of fraud in the petition and that the mere fact that a person is unrepresented by counsel (as contended by plaintiff) that would not be sufficient to allege fraud or be a ground for setting aside a compromise. However, we must assume that an attorney performs his duties in a manner recognized by the ethics of the profession, especially so when there is no allegation in the petition charging otherwise. Fraud is never presumed; it must be alleged and proven.
"We held in effect that at the time of the settlement plaintiff was actually employed in a gainful employment. The joint petition set out that plaintiff claimed that he would be fully recovered by February following. (He did not set out that at the time of the joint petition was signed that he was then unable to work). Defendant contended that he was then able to work (or had fully recovered). But for the purpose of compromise, defendant agreed to pay 31 weeks of compensation from date of injury (part had already been paid). The full 31 weeks' compensation was paid without discount.
"Plaintiff cites the case of Washington v. Holmes Barnes [La.App.] 4 So.2d 51 and McCastle v. Architectural Stone Company [La.App.] 4 So.2d 120, in support of his application, neither of which cases is pertinent to the issue herein involved.
"In the first cited case plaintiff had an injury to his arm which rendered him 20% disabled to perform his usual work, and the settlement was based on 200 weeks, as for a loss of an arm, instead of 300 weeks as for partial permanent disability, and the Court corrected the settlement by extending it to 300 weeks. The parties had agreed upon the extent of disability and his rate of pay and the law fixed the period of disability, therefore, a settlement short of the law could not be equal to a discount of more than 8%-33 1/3% to be exact. In the case at bar the rate of pay was agreed upon, and there existed a dispute as to any disability at the time, and besides the parties agreed upon the duration of term of disability.
"In the second cited case the defendant was the cause of plaintiff accepting the settlement made, under the belief that he could recover `big money' from a general contractor who had caused the injury. The court held that plaintiff acted under an error of fact which error was superinduced by defendant and correctly set aside the compromise, furthermore, the defendant discharged plaintiff as well, although they knew that he still complained of dizziness and had not yet gone to work. The doctor discharged him on December 7th and the settlement was approved on December 10th. The cited case falls within the ruling of the Puchner case. A sum of money was paid to a disabled person for a release. There was no agreement between the parties as to the duration of the disability, hence, the holding in the cited case is to the effect that a person presently under disability cannot be paid a simple sum of money in settlement of his claim and be protected by a judgment approving a claimed compromise.
"We have not overlooked the fact that plaintiff claims his present disability is due to a fracture of the skull received in the fall which injured him on July 8, 1940, and that no mention of this injury is made in the petition of compromise. However, the pleadings do not show that plaintiff was unaware of that fact (or that defendant was aware of that fact) at the time he signed up the agreement to compromise and the petition asking for the Court's approval.
 Addenda
"Since submitting the application for rehearing, plaintiff filed a supplemental petition to which defendant filed a supplemental plea of res judicata, etc., and the Court has considered the supplemental petition in connection with the original petition and plea, and finds nothing that adds to the legal aspect of the case before the Court.
"The supplemental petition sets out that plaintiff's attorney in sending plaintiff the agreement of compromise for his signature and in the sending of the check in settlement of the compromise, as shown by attached letters from the attorney, made no statement that this was a final settlement. The papers which the attorney sent to plaintiff for his signature set out all these facts, that is, that plaintiff was claiming to have a present injury; that defendant was denying that he was unable to work but that they had compromised, and plaintiff was receiving $73.20 in full settlement. There was nothing that the attorney could have written in a letter that would have been more explicit or enlightening than the documents themselves. *Page 816 
"Furthermore, it may be true that plaintiff had a fracture of the skull at the time and it is true that the agreement of compromise did not mention this `injury' in connection with the other injuries, but there is no other allegation in the petition that plaintiff did not know of this fact, and therefore the fact that plaintiff did not advise his attorney then of the fracture to his skull or that he was suffering any ill effect therefrom at the time, has the effect of corroborating defendant's contention that at the time of settlement, plaintiff was suffering from no `injury producing disability to do work of a reasonable character.'
"Dr. Brown's letter, attached to the motion for rehearing, dated July 31, 1941, shows that he treated plaintiff for the injuries received in July, 1940, and states that in August, 1940, plaintiff felt very good and occasionally complained of headaches, but that several months later when the compromise settlement was made (date not known to the doctor) `he had no complaints and stated that he felt very satisfactory'. This coupled with the allegation that plaintiff taught school for seven months, beginning October 31, 1940, convinces us that in point of fact that at the time the settlement was made, December 7, 1940, there was a real and genuine dispute between the parties — not over the wage plaintiff had earned at the time, not over the fact that he received an injury, but over the fact that at the time of settlement plaintiff was then suffering from injury producing disability to do work of a reasonable character. This dispute was compromised by the payment of the sum of $73.20. Under these circumstances a compromise settlement cannot be set aside except on allegations and proof of fraud, and, none having been alleged, we think the plea of res judicata must be maintained.
"In passing we might add that we have not overlooked the fact that plaintiff may now be suffering with a recurrence of disability due to his previous injury, as also shown by Dr. Brown's letter of this year attached to the petition, but whatever may be plaintiff's present condition, has no effect upon the compromise made December 7, 1940, in the absence of appropriate allegations attacking said compromise.
"For the reasons assigned, the application for rehearing is overruled."
Plaintiff is prosecuting this appeal from a judgment rendered and signed in accordance with the opinions.
There has been much confusion of late in the minds of bench and bar of this State over the correct determination of questions similar to the one presented in the case at bar. The last decision appertaining thereto was in the case of Puchner v. Employer's Liability Assurance Corporation, reported in198 La. 921, 5 So.2d 288, 295. In that case the Supreme Court granted two rehearings and the final decision was handed down with one of the Judges recused and two dissenting. However, it is safe, we think, to presume that the majority opinion in that case will be followed in future and until such time as the Legislature may see fit to change that part of the Workmen's Compensation Act.
In passing on this case we will bear in mind that it has not been tried on its merits. The allegations of the petition and the letters from Dr. Brown filed in the record, without anything to rebut them, clearly disclose that plaintiff is suffering from a head injury caused by the accident he was in while in defendant's employ and for which accident it has paid compensation under a judgment of compromise regularly rendered by a District Court. The record likewise clearly shows that Dr. Brown attended plaintiff from the time of the accident and at the time of the compromise agreement and judgment that Dr. Brown did not know of the head injury, or attached no importance to it. Therefore, when Dr. Brown reported to plaintiff, as is set forth in his affidavit, that he had fully recovered from all injuries received in the accident of July 8, 1940, he committed an error of fact.
Plaintiff's attorney joined in the petition with defendant and alleged that the injuries received by plaintiff in said accident consisted of a fractured right wrist and a fractured right hip, temporarily disabling him, and did not make mention of the injury to the head, committed an error of fact and likewise the defendant committed an error of fact. The District Judge did not have plaintiff before him at the time of the compromise judgment and relied upon the facts erroneously presented by the petition.
There is no doubt about the fact that the doctor, the plaintiff, the defendant and the lower judge all thought plaintiff had suffered from a temporary disability and had fully recovered. There was no fraud practiced or any duress used by any of the parties involved in the settlement so far as *Page 817 
the record or pleadings disclose. It is a plain and simple case of a settlement having been made upon errors of fact by all parties concerned. If this is a legal reason for setting aside a judgment of compromise made in a compensation suit under the Workmen's Compensation Act of Louisiana, No. 20 of 1914, as amended, then the plea of res judicata is without merit.
In the Puchner case cited above the Court answered this query in the affirmative and in the following language: "The interest and general welfare of the public being involved the parties cannot settle a compromise claim in contravention of the statute. As stated in our original opinion, matters relative to compensation claims are governed exclusively by the Workmen's Compensation Act and any settlement made in contravention of its provisions and its policies are unenforceable and may be set aside. Such being the case the Articles of the Civil Code are not applicable. For the same reason the contention that the compromise or settlement cannot be set aside because of an error of fact is unavailing."
We therefore conclude that if on trial of the merits plaintiff can show that he is permanently and totally disabled as the result of the accident of July 8, 1940, and under the Workmen's Compensation Law was entitled to an amount when discounted 8% would exceed the amount he received in settlement and that he settled his claim through error of fact as to the extent of his disability, that the judgment of compromise will be set aside and will not any longer have the force of a thing adjudged.
It therefore follows that the plea of res judicata is overruled, the judgment of the lower court reversed and the case is remanded to the lower court to be proceeded with in accordance with the law.
HAMITER, J., concurs.
 *Page 43