This is the second time this case has been before us. First it came up on a plea of res judicata which had been sustained by the lower court. We reversed that judgment and remanded the case for a trial on its merits and in doing so we set out in detail the pleadings and facts up to that time (See La.App., 6 So.2d 806) and we see no reason for doing so again.
After the case was returned to the lower court plaintiff filed another amended petition in which he alleged incidents to show that he had suffered continuously from the head injury from the day of the accident until then. Defendant filed another plea of res judicata and in answer denied that plaintiff was suffering from the injury he alleged upon.
On the trial plaintiff proved beyond doubt that he was totally disabled from performing any kind of work, either physical or mental, and that his disability was due entirely to the head injury he received in the accident on July 8, 1940 when he fell from a scaffold approximately 30 feet high onto a concrete sidewalk fracturing his right wrist, hip and skull just above the right ear. The doctor who treated plaintiff for several months after the accident, and who was employed to do so by defendant, was plaintiff's chief witness. He was corroborated by four other doctors. The defendant offered no testimony in rebuttal on the question of disability.
Dr. J.R. Brown, who treated plaintiff, frankly admitted that when he discharged plaintiff he thought he had fully recovered and so informed plaintiff's counsel and defendant but that he had made a mistake. His frankness in admitting his error is most refreshing and causes us to have the utmost respect for him. It is so contrary to the greater part of the medical testimony that comes before us in which the medical men are only willing to admit that they cannot make a mistake. After hearing the testimony the lower court rendered the following opinion on August 11, 1942:
"Plaintiff sues to recover compensation for injuries received while in the employ of defendant. He alleged that at the time of the accident he was employed at a rate of $9.00 per week, which is admitted by defendant; that while employed he suffered fractures of the upper and lower limbs and also a fracture of the skull; that he was paid compensation for several weeks, totalling $112.80, being compensation from date of injury, July 8, 1940, to November 22, 1940; that on October 30th he began teaching school at Morgan City, Louisiana, at a monthly salary of $42.50 per month, which he received for a period of seven months; that on December 13, 1940 he entered into a compromise settlement with defendant wherein he was paid an additional amount of $73.20 but that no mention was made of the fact that he had received a fractured skull at the time of the accident, July 8, 1940; that as a result of said fractured skull he had suffered severe headaches and that at the time of the conclusion of his school term he had been unable to do any character of work. The original suit was dismissed on a plea of res judicata but reversed on appeal to the Court of Appeal (6 So.2d 806) and remanded to the District Court for trial of the merits.
"The evidence shows that plaintiff, as a result of said injury to the skull, is now totally and permanently disabled to do work of a reasonable character and this fact is not controverted by defendant. The medical testimony shows that plaintiff was originally treated by Dr. J.R. Brown, at the instance of defendant, and at the time of his discharge by the doctor, plaintiff was not suffering from the effects of the skull injury. Dr. Brown was the main witness for plaintiff on trial of the case on the merits. The evidence further shows that *Page 825 
plaintiffs was examined by a physician of his own choice, Dr. R.T. Nelson, on September 9, 1940, who gave a written report of his examination, which report is filed in evidence. This doctor with plaintiff visited Mr. Prothro's office with respect to plaintiff's compensation, and this report was given to Mr. Prothro. The report does not contain a reference to the fractured skull. Plaintiff never advised Mr. Prothro that he had a fractured skull prior to the settlement of December 1940. Plaintiff did not visit a doctor at Morgan City but taught the full term of seven months from the time he entered the school, on October 30, 1940, through May 1941. Plaintiff testified that he had headaches throughout the term but he was not disabled until after school was out and the hot weather season came around. Hence, from the evidence no one was advised that plaintiff was experiencing any ill effect due to the skull fracture between September 1940 and the date of settlement in December, not in fact until after May 1941, when plaintiff returned to Shreveport.
"Plaintiff sues for compensation of $9 per week for 400 weeks, less the amount paid by defendant. The amount of $9 is arrived at as being 1 1/2 times the amount of weekly compensation claimed as a penalty for the settlement made in December, 1940.
"Plaintiff's wages at the time of the injury as alleged by plaintiff and admitted by the defendant were $9 per week, hence the regular compensation was 65% of that amount or the sum of $5.85 (although the defendant had paid plaintiff $6 per week).
"We do not think that plaintiff is entitled to be paid as a penalty 1 1/2 times the rate of the regular compensation for two reasons; first, at the time of the settlement in December 1940, plaintiff was not suffering from any disability to perform work of a reasonable character as he was in fact at the time engaged in earning more than he was earning prior to the accident; secondly, if he was suffering any disability or ill effect from the fractured skull at the time of the settlement, he did not advise any one of that fact. He was examined by Dr. Brown prior to the settlement and plaintiff was not at that time complaining of dizziness in the head and Dr. Brown thought he was all right. There is no intimation, much less evidence, that there was any fraud or ill practice in securing the settlement of December 1940 but that all parties concerned were in utmost good faith. Puchner v. Employers Liability Assurance Corporation, 198 La. 921,5 So.2d 288.
"Plaintiff did not sue for a lump-sum settlement, his prayer being for judgment against the defendant `in the full sum of $9 per week for a period of 400 weeks beginning July 8, 1940, less the sum of $186 already paid, with interest * * *.'
"As heretofore shown plaintiff's compensation is $5.85 per week and he is entitled to that sum during disability, not to exceed 400 weeks, subject to the amount paid, commencing July 8, 1940, with 5% per annum interest on each weekly payment in arrear, together with an additional sum of $56.25 as medical expenses, defendant having already paid out $193.75 on this account.
"We consider this case in the light of one who was injured and after a time became able to work and settlement of the injury made; and that after a lapse of time his disability recurred and that upon such happening he sues to recover additional compensation. This case is unlike the Puchner case and the Craig case for the reason that the settlements there made were made while the employee was disabled and under the Puchner case decision the court held that the parties were not at liberty to settle while the employee was in a state of disability; here, the plaintiff was not `disabled' at the time of settlement and he cannot now recover more than the usual compensation. Medical experts' fees fixed at $25 each."
Four days later plaintiff filed another supplemental and amended petition in which he prayed for judgment to be paid in a lump sum. A motion to vacate the allowance of this last amended petition was filed by defendant and upon trial thereof the order allowing it filed was vacated by the lower court and rendered the following written opinion in doing so:
"This matter is presently before the court on a motion to rescind and set aside a verbal order allowing the third supplemental and amended petition. The case was originally tried and judgment rendered in favor of plaintiff for $5.85 per week during total disability, not to exceed 400 weeks, and denying plaintiff compensation at one and one-half times the $5.85 per week on two grounds, viz.:
"1. That the so-called settlement was made in good faith by all parties and particularly because at the time of settlement *Page 826 
plaintiff was not entitled to further compensation; and
"2. That plaintiff had not prayed that the amount recovered be paid in a lump sum, his pleading merely asked for judgment for 1 1/2 times his regular compensation for a period of 400 weeks.
"Plaintiff then filed this third supplemental petition (the second having been filed before trial) praying that the entire amount of compensation be decreed to be due in a lump sum. The amended petition was `allowed' at a session of court when counsel for defendant was absent, whereupon counsel for defendant, after noting the minute entry, filed the present motion to vacate the order of allowance.
"Without going into a discussion of what pleadings may be filed after judgment, we think that the amended petition herein should be disallowed, not particularly because it comes too late, but mainly for the following reasons:
"Plaintiff has sued for one and one-half times the compensation that would normally have been due him as a penalty for the so-called lump-sum settlement made between him and defendant. However, plaintiff has not set out in his pleadings heretofore filed or proven by evidence in the case that the so-called settlement was made in bad faith, or discounted at more than 8% per annum, otherwise, he could not recover penalty. See Puchner v. Employers' Liability Assurance Corporation, 5 So.2d page 300.
"There is another ground which we think would prevent plaintiff from recovering in a lump sum 1 1/2 times the normal compensation for the whole 400 weeks (although this point was not argued by either side) and that is my opinion that the act does not provide any such penalty. Plaintiff was paid compensation by way of compromise up to and including February 8, 1941, thereafter he was paid no compensation but filed this suit on October 17, 1941, so that at the time of filing the suit there was due only eight and a fraction months' compensation. Plaintiff has not recovered judgment for 400 weeks, but only for the duration of disability, so at this time we know how much is due but not how much will be due, and the law under which penalties are provided says that the employee or his dependents within two years after the settlement, `* * * be entitled to demand and receive in a lump sum * * * such additional payment as together with the amount already paid will aggregate 1 1/2 times the compensation which would have been due under this act, but for such lump-sum settlement. * * *'
"At the time this suit was filed there were some 35 weeks' compensation that had not been paid and assuming that plaintiff was entitled to compensation, then on the date of filing the suit he could say there would have been due 35 weeks of compensation, if the settlement had not been made, and by reason of said settlement I am entitled to 1 1/2 times the compensation due from date of injury to date, subject to the amount paid. The act does not say 1 1/2 times the amount of compensation that will be due, but only on the amount that would have been due. If this is incorrect and a penalty is due then the penalty will be 1 1/2 times the amount due as it accrues because nowhere in the act does it provide that the employer will be required to pay the full 400 weeks of compensation (when it may not ever become due) and in addition, pay a 50% penalty on top of that, all as a penalty for making a settlement under facts and conditions justifying a settlement as was made in this case — and in which event plaintiff has already sued for 1 1/2 times the amount of his weekly compensation as it accrues.
"The motion to recall the allowance of the amended petition is allowed."
The lower court signed a judgment awarding plaintiff compensation for a period of disability not to exceed 400 weeks at the rate of 65% of his weekly wages at the time of the accident and $250, doctors' and medical bills, less the amount of compensation paid to plaintiff by defendant and the amount paid in compromise settlement, and less the amount of doctors' and medical bills already paid by defendant. It also allowed credit to defendant for 15 cents per week for 31 weeks, the amount of compensation which defendant overpaid plaintiff. It also allowed defendant to deduct from the 400 weeks the six months plaintiff had taught school just prior to and after the compromise settlement.
Plaintiff perfected an appeal from this judgment and defendant has answered the appeal praying that its plea of res judicata be sustained and if not that the judgment of the lower court be affirmed.
In this court plaintiff urges that the lower court erred in allowing the six months deduction plaintiff was engaged in *Page 827 
teaching in a colored school from the 400 weeks' time that it also erred in not allowing the penalty of one-half over and above the amount of compensation due and in not ordering the full amount paid in a lump sum.
We are of the opinion that plaintiff's complaint about deducting the six months' time from the 400 weeks is well-founded. The doctor of plaintiff's own choice and defendant's doctor did not consider the head injury to be serious and when they pronounced plaintiff fully recovered he accepted their findings as true and secured a teaching position in a colored school in Morgan City, Louisiana, at a salary of $42.50 per month. He testified that he suffered from headaches and dizziness continuously; that the principal of the school often told him he was mentally off balance and that the children he taught made fun of him, due to his peculiar actions, and that on one occasion he fell out while attending a faculty meeting. The testimony of all the doctors as to plaintiff's condition and the effects of it corroborate his story. In the condition he was in plaintiff should not have attempted to do any kind of work, either mental or physical, and had the doctors known his true condition, they would have forbidden him to attempt such work.
We have held in numerous cases that the defendant is not entitled to a credit for the earnings of one due compensation when through necessity he performs labor when not physically able to do so or when his labor is performed while suffering greatly from the injury which entitled him to compensation. We are of the opinion defendant is not entitled to a deduction of the six months plaintiff taught school from the 400 weeks.
The lower court, in our opinion, was correct in refusing to allowing penalties in this case. The compromise entered into by plaintiff and defendant was in good faith. All parties concerned were in error as to plaintiff's true condition, due to the mistakes of plaintiff's own doctor as well as the defendant's doctor. As we said in our former opinion, plaintiff thought he had fully recovered, as did the doctors. He so alleged in a joint petition which was prepared entirely by his attorney.
The case at bar is widely different from Craig v. Compressed Industrial Gases, La.App., 7 So.2d 197, 201. In that case we said: "In the Puchner case there was bona fide error of fact concerning the duration and the extent of disability, which issue, under existing jurisprudence, could be foreclosed by compromise; whereas, in the present case [Craig case] there was in reality no dispute as to the extent and duration of disability, nothing to base such upon, and, therefore, no error of fact nor of law contributed to the confection of the compromise. In view of these established facts, we are unable to perceive what influence the former jurisprudence of the Supreme Court and the courts of appeal of this state could have had upon the parties in arriving at the terms of compromise."
In the Craig case the doctor for defendant had informed both plaintiff and defendant that plaintiff was totally disabled and he refused to hazard a guess as to when he would recover, if ever. It is entirely different from the case at bar where the doctors of all parties concerned were of the opinion plaintiff had fully recovered from his injuries. To force defendant to pay a heavy penalty under these facts would be most unjust and was never contemplated by the law or its makers. For the same reason plaintiff is not entitled to have the entire judgment paid in a lump sum for that is likewise a penalty assessed against one who violates the spirit and letter of the compensation act when the true facts are available or before him, as in the Craig case.
We are of the same opinion in regard to the plea of res judicata as we were when we handed down our former opinion. It is therefore overruled.
It therefore follows that the judgment of the lower court is amended by making the compensation payments of not more than 400 weeks begin as of the date of the accident, July 8, 1940, instead of August 1, 1941, as fixed by the lower court, and in all other respects the judgment is affirmed; costs of appeal to be paid by appellee. *Page 828