In this case, the lower court rendered the following written opinion which correctly states the issues and facts:
"This is a Workmen's Compensation case. The facts, or most of them, are not disputed. The plaintiff, while in the employ of W.L. Hunter and through him for the Tremont Lumber Company, was directed on December 19, 1941 to go to Ashland for a physical examination. At that time he was earning $2.40 per day. On being examined by Dr. J.W. Scott, who was the Tremont Lumber Company's physician at Ashland, the plaintiff was found to be suffering from a hernia or a potential hernia on his left side and a knee injury which was described as an abrasion just above the knee, and the Doctor, in making his report, did not attach any importance to the injury, considered it minor and observed that no time should have been lost on account of the knee injury. Of course, after this examination, plaintiff was not permitted to go back to work because of his physical incapacity on account of the hernia. He engaged the services of Mr. Harry V. Booth, of Shreveport, who contacted the defendants in this case and secured a compromise settlement of $300.00.
"From the time of the injury to the knee, which was December 16, 1941, until about October, 1942, the knee seemed not to have bothered the plaintiff a great deal, but about that time he had an acute attack of infection which carried him to the hospital and which resulted in his being totally and permanently disabled.
"This suit seeks to set aside a judgment based on the agreement previously mentioned for $300.00, asking for compensation at the rate of $9.36 per week during the period of plaintiff's disability not to exceed 400 weeks, plus $250.00 as medical expense and less $300.00 previously paid and, in addition thereto, as a penalty one and one-half times said sum to be paid in a lump sum.
"Since the Puchner case, lump sum settlements made at a greater discount than 8% per annum, and compromises made in fraud have been permitted to be set aside and the penalty of one and one-half times in a lump sum has been held mandatory. Therefore, in order for the plaintiff in this case to have judgment as prayed for, it would be necessary that the petition and judgment in Suit No. 7314, being the compromise judgment with reference to the injury presently sued on, would have to be entered into in violation of the Workmen's Compensation Law. A careful examination of this document shows clearly that there was no dispute with reference to the knee injury. It states instead that, `Frank Thomas was treated for his knee injury and he was discharged as cured as of January 30, 1942.'
"Mr. Thomas, in his testimony on page 6 of the transcript, when asked what the $300.00 settlement was for, stated that it was for the hernia and added that the knee was not mentioned. It seems clear, from a careful reading of the entire record, including Suit No. 7314, that Mr. Booth, representing the plaintiff, after some correspondence with the defendants solely about the hernia, secured an agreement from defendants to pay $300.00 in compromise settlement of the same. Mr. Theus, representing the Tremont Lumber Company, having received a report from Dr. Scott about the hernia and also the knee injury which Dr. Scott thought was very minor and had been cured, added the knee injury as having been cured. I don't think that Mr. Booth or Mr. Thomas had ever discussed the knee injury with Mr. Theus at all before these pleadings were drawn; in fact, it seems doubtful that Mr. Thomas had ever even discussed it with Mr. Booth.
"It was natural, under the circumstances, for Mr. Theus to believe the knee injury of such minor nature as to require very little if any compensation, for he drew his pleadings on May 7th, almost *Page 664 
five months after the knee was cut, and surely it was reasonable for him to assume, since he had heard nothing to the contrary, that the minor abrasion as described by Dr. Scott would beyond any doubt have been cured and well by May, or else it most certainly would have been claimed by Thomas through Booth at the same time the hernia injury was being presented and compromised. The flare-up of infection in this knee as late as October was described as possible by practically all of the doctors who got on the stand, — and the facts all indicate that the knee gave every appearance of being well until this acute infection caused by the germ that lay dormant inside the injured knee.
"The $300.00 paid was paid for the hernia; that's what the plaintiff said it was for and that's what defendants' attorney, who drew the instrument, said it was for and, this being true, there was no consideration paid for the knee injury and, if there was no consideration paid, it could not be termed either a lump sum settlement or a compromise settlement, or would that part of the judgment releasing the defendants for the injury to the knee be valid for the very good reason that no consideration was paid for same. It is true that defendants sought to hide behind the judgment through pleas of res judicata, but they were unsuccessfully plead and rightly so, for there was no consideration to form the basis of the judgment for the release of the knee injury.
"In the case of Scott v. Caddo Parish School Board [La.App.],12 So.2d 823, the Court said:
"`Where compromise settlement of compensation claim was entered into in good faith and all parties were in error as to claimant's true condition of total permanent disability, claimant thinking that he had fully recovered from the compensable injury, trial court properly refused to allow penalties against the employer.
"`Where compromise settlement of compensation claim was entered into in good faith and all parties were in error as to [the] claimant's true condition of permanent disability, claimant was not entitled to have his total permanent disability compensation paid in a lump sum, for that is a "penalty" assessed against one who violates the compensation act when the true facts are available to him.
"`Where compromise settlement of compensation claim was entered into and approved by district court under mistake of fact on part of the employee, employer, and the court as to extent of disability, the judgment of compromise was not "res judicata" of claimant's right to recover additional compensation.'
"Therefore, even if a part of the $300.00 was considered as consideration of the settlement of the knee injury, which this Court does not think it was, there apparently being error on the part of both plaintiff and defendants in this case as to the true state of the knee, plaintiff could still recover his weekly compensation, but would not be entitled to the penalty.
"This is my conclusion in any way you might interpret the compromise suit and judgment.
"Plaintiff sued for $250.00 hospital and doctors' bills, which were proven.
"Therefore, let there be judgment in favor of the plaintiff and against the Tremont Lumber Company and W.L. Hunter, in solido, in the sum of $9.36 per week, beginning December 16, 1941, and during the period of plaintiff's disability, not to exceed four hundred weeks, plus $250.00 for doctors' bills, and less $300.00 paid on May 23, 1942, with legal rate of interest from the maturity of each weekly installment until paid, and awarding an attorney's fee to Henry W. Bethard, Jr., attorney for petitioner, of 20% of the sum of said judgment, not, however, to exceed the sum of $1000.00.
"The Court wishes to compliment Mr. Bethard on the brief filed in the case and regrets that it did not have the benefit of a brief from the defendants. Experts' fees are fixed at $25.00 each."
A judgment was signed in accordance with said opinion and plaintiff has perfected an appeal to this Court.
Plaintiff suffered two accidental injuries while in the employ of W.L. Hunter, the first accident occurred in November, 1941, causing plaintiff to suffer a potential hernia, and the second on or about December 16, 1941, when the teeth of a saw stuck into his knee. This last injury did not cause plaintiff any trouble until it became infected the latter part of September or first of October, 1942. From that time until now, the knee injury has been totally disabling and the evidence *Page 665 
shows that there is very little if any chance of plaintiff's condition ever improving.
On May 22, 1942, plaintiff and defendants herein entered into a compromise agreement by joint petition to the District Court, which compromise was put into the form of a judgment and signed by the Judge of the District Court. In the petition, after stating the contentions of the respective parties thereto, it set forth the following: "4. As a result of the contentions of the parties there is a serious dispute existing between them as to whether or not Frank Thomas received a hernia, or potential hernia, to his left side on or about November 20, 1941, and in order to compromise and settle this dispute, all parties have agreed upon a settlement of $300.00 to be paid in cash, which is to include all compensation that is owing Frank Thomas for the injuries he sustained to his knee, together with all doctors', hospital and medical bills that have been incurred in the treatment of his injuries. Before, however, this settlement can be completed, it will be necessary that this Honorable Court render judgment approving same."
The judgment provides that plaintiff have judgment against defendants in the sum of $300, as a settlement and compromise of all claims for compensation, damages and expenses that he now has or may hereafter require because of any personal injuries he may have sustained on or about November 20, 1941.
In October, 1942, after plaintiff's knee had become infected, defendant, Tremont Lumber Company, was notified by plaintiff's attorney. Acting thereon, it instructed its physician to investigate plaintiff's condition. The doctor visited plaintiff in the sanitarium and reported to said defendant that plaintiff's disability was not caused by the knee injury. No action was taken by defendant, and this suit to annul the compromise judgment, dated May 22, 1942, was filed and compensation and penalties were prayed for, alleging total and permanent disability due to the knee injury sustained on December 16, 1941.
Plaintiff's immediate employer and the one primarily liable, pleaded res judicata, based on the compromise judgment of May 22, 1941. The other defendant, who was secondarily liable, filed an exception of no cause or right of action. Later, both filed answers in which they contended the compromise agreement and judgment were not intended as a compromise or settlement of the claims based on the knee injury, but were solely applicable to the claim for disability due to the accident causing hernia. The joint petition of plaintiff and defendants clearly covered all liability of defendants to plaintiff for the injuries causing hernia and the knee injury, however, the judgment signed on the strength of the petition only covers claims arising out of personal injuries sustained by plaintiff on or about November 20, 1941, which was the accident causing hernia and not the accident causing the injury to the knee. At the time of the signing of the judgment, the accident which finally caused the knee injury had occurred, but the injury causing disability had not at that time come into existence and there was no disability caused from or by the knee injury until October, 1942. At the time of presenting the joint petition, the slight scratch on the knee had healed, so far as outward appearances were concerned, and had never caused plaintiff any disability, therefore, it was not at that time compensable and there was no idea in the mind of any one that it would ever cause any trouble in the future.
The judgment on its face makes no mention of the knee injury by reference to time of accident or otherwise, and could not successfully have been urged as a bar to a suit for compensation for the injury to the knee, therefore, there was no necessity for a suit to set aside or annul the judgment before suing under plaintiff's present claim.
There is no dispute now over the fact that plaintiff is totally and permanently disabled from performing the labor of reasonable character and the disability is directly traceable to the injury to his knee sustained on or about December 16, 1941, while performing labor for defendants in the course and scope of his employment. There is no dispute over the wage plaintiff was receiving and, therefore, the lower Court has found the correct amount of compensation due to plaintiff by defendants. However, it was in error in allowing the deduction of the $300 paid to plaintiff in settlement of the accident causing hernia. We are also of the opinion the lower Court was in error in fixing the time the first weekly payment was due as on December 16, 1941, the date of the accident, instead of October 1, 1942, the date the disability began. *Page 666 
The judgment of the lower Court is therefore amended by striking therefrom the sum of $300 allowed to defendants as a credit against the judgment in favor of plaintiff and the due date of the first payment is fixed as October 1, 1942, instead of December 16, 1941, and in all other respects the judgment is affirmed; cost of appeal to be paid by the appellee.