## PUCHNER v. EMPLOYER'S LIABILITY ASSUR. CORPORATION, Limited.

### No. 17467.

Court of Appeal of Louisiana. Orleans.

Jan. 27, 1941.

Rehearing Denied Feb. 10, 1941.

James G. Schillin, of New Orleans, for appellant.

Frank T. Doyle, of New Orleans, for appellee.

JANVIER, Judge.

Otto Puchner, 61 years of age, by accident arising out of and occurring in the course of his hazardous employment by Jackson Brewing Company, on March 12, 1938, sustained injury consisting of "an intertrochanteric fracture of the right femur". He was sent to a local hospital, where he remained 54 days, after which he went to his home, under treatment of his employer's physician. On February 22, 1939, the said physician concluded that he had practically recovered and could shortly return to work. Believing, however, that it might be some time before he could completely regain his strength and the normal use of his leg, the insurer of the employer sent its adjuster to discuss with him a compromise settlement. In addition to the amount already paid, a settlement for $500 was agreed upon and a joint petition was presented to the Civil District Court in which that court was asked to approve the compromise. Puchner was taken in person to the court and the district judge saw him and approved the settlement and thereafter the amount agreed upon was paid to him. In addition to the amount paid in settlement, Puchner, as we have said, had received the full compensation to which he was entitled during the period of admitted disability—that is to say, from the time at which the accident had occurred until the time at which the settlement was made, so that the $500 was paid him as consideration for the compromise and no part of it was paid as compensation for any of the period of admitted disability.

Puchner's condition did not continue to improve and it is now certain that, as a result of the original injury, or as a result of another injury subsequently sustained, or as a result of what one of the doctors describes as a general degenerative process, Puchner is now totally and permanently disabled and will never be able to return to work.

This suit is brought in an attempt to set aside the compromise and to obtain judgment for the full amount to which he would have been entitled had the settlement not been effected, and, though Puchner does not pray for it, in one of the articles of his petition he alleges that he is entitled to the penalty of 50 per cent. which is provided for under the state compensation laws where compensation payments are commuted into a lump-sum settlement and the amount due is discounted at a rate greater than 8 per cent.

Puchner sets forth several reasons, for any of which he alleges that the compromise should be set aside.

He charges that when he agreed to accept the compromise "he was induced to

sign said joint petition by the fraud and misrepresentations practiced upon petitioner by the insurance company acting through its agents and employees" and he also says that "defendant's agents and employees said that he would be able to return to work very shortly thereafter", though they knew "that this could not be accomplished because of the nature of petitioner's injury".

He further contends that, at the time the settlement was effected, there was no dispute between him and his employers as to the seriousness of his injuries and that, in the absence of such a dispute, there could be no compromise since, under section 17 of the Compensation Statute, Act 20 of 1914, as amended by Act 38 of 1918, the existence of a dispute is an essential prerequisite to a valid and binding compromise of a claim for compensation.

There was judgment against plaintiff sustaining the validity of the compromise and he has appealed.

At the outset let us say that the record leaves no room for doubt that, at the present time, Puchner is totally disabled and that there is no prospect that he will ever recover, and it is certain, therefore, that, had there been no compromise, he would have been entitled to a judgment for the maximum weekly amount and for the maximum period.

■ However, that this was not his condition and that, at least, such a condition was not manifest when the settlement was arranged, is evident from the finding of the district judge that "at the time the plaintiff appeared before this court for the compromise settlement, he seemed to be a man on the fair road to recovery". In order to determine whether a compromise was fairly entered into, we must consider the situation as it existed when the compromise was made and not in the light of what may have developed subsequently. That since the settlement was made there has been a great change in his condition, is also evident from the record. The district judge stated that, at the time of the trial of this suit to set aside the compromise, "there was in the personal appearance of the plaintiff a changed and a marked condition * * *. Plaintiff had to be brought in the courthouse on a stretcher".

■ Counsel for plaintiff calls attention to the fact that, at the time of settlement, plaintiff had consulted no doctor of his own choosing, and he argues that, since this was so, it was the duty of Dr. Geismar, who was treating him on behalf of the employer and of the insurer, to make certain of his true condition and to advise him fully and fairly concerning this condition. Defendants concede this and answer that this was done and that at that time they and Dr. Geismar, and, in fact, Puchner himself, were all of the opinion that in a very short time he would be able to return to work. And there is nothing in this record to indicate that there was the slightest evasion or bad faith on behalf of this physician when he rendered the opinion that the plaintiff would shortly regain his usual strength and ability to work. If there had been any evidence of bad faith, surely our brother below would have rendered judgment for plaintiff, for he recognized the pitiful situation in which plaintiff now finds himself and evidenced sincere sympathy for him, as, of course, we do also.

Counsel makes much over the fact that, when the doctor advised that Puchner would shortly be able to return to work, he did not require the taking of an X-ray photograph to determine whether there had been a proper knitting of the broken bone, and it is true that no such X-ray was taken. The explanation of the doctor, however, is entirely understandable. Many surgeons who testified stated that such a fracture usually requires from ten months to a year for complete healing. This injury was sustained on March 12, 1938. The fracture was set and, on April 14, 1938, one month later, an X-ray photograph showed the ends of the broken bone in good position, with abundant callous formation. It is shown that the callous formation is provided by nature to strengthen the bone at the point where the break has occurred. The improvement of Puchner from that time was normal and uneventful. He first remained completely in bed, then he was able to get about with the aid of crutches and a stick, later he found it possible to discard the crutches, and still later Dr. Geismar reported that on December 2, 1938, he was able to walk without the aid of a crutch or a stick. When he appeared in court in connection with the judicial approval of the compromise, the district judge, as we have stated, found him "on the fair road to recovery".

Under such circumstances we see no reason to hold that the doctor should have required the taking of another X-ray pho-

tograph. Even if another had been taken, there is no certainty that it could have been determined from it that his condition was not, in fact, just what his external appearance and apparently normal recovery indicated it to be, for other experts disagree as to whether such additional photograph would have justified the conclusion that he was on the verge of the development of the serious disability by which he has now been overcome. It may be that other doctors would have required other photographs and it may be that from such photographs other doctors would have concluded that he was not on the road to complete recovery.

But we are not concerned with what such other doctors might have done. This doctor was obviously in good faith. He was a recognized practitioner and he did what a reasonably careful and experienced man would have done. Having done so, he reached the conclusion that Puchner was almost well, and, as a matter of fact, we cannot say that at that time he had not almost recovered as he seemed to have done. He himself thought that he was well, for, on several occasions, before Dr. Geismar finally advised that he could go back to work, he asked the doctor to permit him to do so.

Most of the doctors who testified expressed the opinion that there must have taken place a vast change in Puchner's condition between the time of the compromise and the time of the trial. Dr. Ficklen, for instance, states that he examined the X-ray taken after the break had commenced to heal and that he could see no reason why that injury should not have healed to such an extent as to have made it possible for him to return to work some ten or twelve months later, and he added that some other "degenerative process" had later set in and had caused complete and permanent disability, and he also added that, although he could not say just when the "degenerative process" had commenced, it could have come about since the date of the settlement. He suggested, as a cause for this new trouble, "multiple sclerosis of the cord" (spinal) and said that such a process can occur within two weeks. He gave the following testimony:

"Q. Are you willing to testify positively that neither the disability as a result of the ankylosis of the left knee, nor the disability as a result of the intertrochanteric fracture, have anything to do with his present condition? A. Yes, sir.

"Q. You can't be mistaken about that? A. No, sir; I can't."

On this evidence it is not possible for us to say that, even had the attending physician, Dr. Geismar, required another X-ray when he recommended this settlement, that X-ray would have disclosed anything to indicate that Puchner had not practically recovered. It must be remembered that it was not immediately after the settlement that Puchner's condition began to grow worse. It was six months after his discharge, or in August, 1939, that he is found apparently so well that he made another effort to obtain another position, and it was not until almost a year later that he filed this suit. It is shown that in August, 1939, he fell and sustained an arm fracture and there is nothing to show that this fracture has not had something to do with his present condition. That the original fracture of the right femur cannot be solely responsible for his present disability is evidenced by the fact that the other, or left leg, is now shown to be even more disabled than is the right.

So much for the medical side of the case.

It is said that he was imposed upon and that feature we have already discussed. We add only that the record shows that the effects of the compromise were well understood by him and that he "traded" with the adjuster to obtain the greatest settlement possible and that it was only after he concluded that the maximum figure had been reached that he agreed to accept the offer of $500, in addition to the full amount which had already been paid for the period of disability. At $20 per week, $500 would have been sufficient for twenty-five weeks, or almost six months, and it is obvious that at that time every one believed that, long before the expiration of six months, he would be back at work.

It is said that no dispute existed because defendants knew that he was permanently disabled. But this is only a new form of the argument of which we have just disposed. If defendants knew that he was permanently disabled, then, since he had no attorney or doctor, it was their duty to advise him as to his true condition. We have already found that they believed him almost well. That a dispute did exist

is alleged in the petition for approval of the compromise. Puchner contended that he was permanently disabled and, defendants contended that he had practically recovered.

 Counsel for plaintiff seems to make an alternative argument that, since Puchner believed himself able to return to work, then, if defendants really thought he had recovered, there was accord between them as to the extent of disability and, therefore, no dispute existed. That argument is based on a complete reversal of the position taken in the contention that he not only had not recovered, but was, in fact, permanently disabled. But, if we may assume that, at the time of the settlement, both parties believed plaintiff had completely recovered and that, therefore, there was no dispute, we do not think that this would prevent the parties from entering into a complete settlement. In other words, assuming that that was the situation, then defendant said to plaintiff: "We all believe that you are well, but, in order to effect a complete and binding compromise, we are willing to pay you $500.00". In that situation we see no reason whatever why the acceptance of that $500 would not have effected a complete and binding compromise.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.