GLADNEY, Judge.
Floyd Griffin, an employee of the W. S. Peck Estate, has brought this action to recover additional workmen’s compensation and to annul and set aside a judgment rendered on September 10, 1952, approving a compromise settlement entered into between Griffin, his employer, and its insurer, the Coal Operators Casualty Company.
Grounds of attack upon the judgment alleged upon are: first, that a bona fide dispute did not exist between the parties to the compromise settlement as there could not have been reasonable doubt Griffin at the time of the settlement was totally and permanently disabled; and second, that fraud and misrepresentation were practiced by the attending physician, Dr. D. D. King and an agent of the insurer, Harold L. Vandyke, Jr., in two respects, viz., that Griffin was induced to enter into the settlement by false statements made by Vandyke, that the only way the doctor could be paid *483 was from the proceeds of the settlement, and that he, Vandyke, had previously talked with W. S. Peck, Jr.
By way of defense, Coal Operators Casualty Company asserts: (1) that an action to annul a judgment cannot be rendered unless all proper parties are joined and that the W. S. Peck Estate, an essential party, has not been made a party to this suit; (2) that plaintiff’s petition merely alleges upon errors of fact and does not declare upon any facts which constitute fraud and misrepresentation; and (3) further that plaintiff has failed to prove he entered into the compromise settlement by reason of fraud or misrepresentation. Also we recognize the defendant has filed exceptions of no cause of action, no right of action and res judicata. And even though appellant has argued earnestly in support of the exceptions we pretermit consideration of these pleas, being of the opinion that the case should be decisioned upon the merits. By adopting this procedure we are enabled to give attention to all phases of plaintiff’s claim.
The trial court overruled the exceptions enumerated above and after trial on the merits, rendered the following judgment:
“Floyd Griffin filed this action to set aside a compromise agreement and settlement entered into between himself and the Coal Operators Casualty Company, which settlement was made a judgment of this court on September 10, 1952, in the suit entitled ‘Floyd Griffin vs. Coal Operators Casualty Company, No. 6545’ on the docket of this court, being a workmen’s compensation case, and he alleges as a ground for relief, error and fraud and in the alternative that the purported lump sum settlement was made at a prohibited discount.
“Upon the trial of this case, this court feels that the plaintiff, Floyd Griffin, has shown that the errors of fact were so gross that he was fraudulently deprived of his rights in making the lump settlement complained of and which amounted to a lump sum settlement at a prohibited discount, therefore,
“It is ordered, adjudged and decreed that the judgment dated September 10, 1952, in the suit of ‘Floyd Griffin vs. Coal Operators Casualty Company, No. 6545’ on the docket of this court, be, and the same is now set aside and declared to be null and void, and it is further ordered that the Coal Operators Casualty Company, pay all the cost of this proceeding.
“Judgment read, rendered and signed at Harrisonburg, Louisiana, this 31st day of December, A. D. 1954, in open Court.”
The defendant exhausted its remedies in the court a quo and has perfected suspen-sive and devolutive appeals to this court. Appellee has filed an answer to the appeal, praying that the judgment be amended to include an award of the additional compensation to which he alleges he is entitled.
For a better understanding of the basis for plaintiff’s claim and the defense thereto, we record the material and pertinent facts as we find them.
While engaged as a tractor driver for the W. S. Peck Estate, on May 31, 1952, Floyd Griffin received an injury to his left leg which entitled him to workmen’s compensation. W. S. Peck, Jr., one of his employers, took him to a clinic in Harrison-burg operated by Dr. D. D. King. It was found that the left tibia and left fibula were fractured. According to the doctor, on June 11, 1952, treatment required open reduction for the purpose of securing better alignment of the tibia, which had received an oblique compound fracture, and by the operative procedure a plate was affixed across the fracture site and secured to the bone by four pins or screws. Dr. King said after this was done there was good progress. Examinations and X-rays were had on July 16 and August 16, 1952. On July 29, 1952, Dr. King gave a report to *484 the defendant, in which he estimated further total disability to continue from six weeks to two months. Under remarks, he said:
“On the 31st' of May, the date of injury immobilization without plating was made. On June 11 open reduction performed. Patient has done well since his surgery and should start weight bearing in 6 weeks to two months: No permanent disability is expected to result. He should be able to perform his normal occupation in three months or so.”
Thereafter it was the opinion of Dr. King that the leg continued to heal without incident until the latter part of December, 1952, when an X-ray picture revealed that one of the pins holding the plate . had sheared off. He thought this was due to a refracture which occurred after the cast was removed. Notwithstanding this interfering factor the doctor still believed the injured bone would heal if Griffin was fitted with a short leg brace.
About September 1, 1952, following receipt of the report of Dr. King of date July 29th, Harold J. Vandyke, Jr., an adjuster for defendant, came, to Harrison-burg and Sicily Island where he discussed the disability of Griffin with Dr. King and advised W. S. Peck, Jr. he wanted to make a settlement with Floyd Griffin. As a result of the negotiations Floyd Griffin agreed to- accept $350 and the additional sum of $157.80, the latter sum being the amount in excess of the statutory liability of the insurer for accrued medical expenses. Legal papers pertaining to the settlement were drafted and on September 10, 1952, Donald M. Garrett, attorney for the compensation carrier, defendant herein, picked up Floyd Griffin and drove him to Harri-sonburg for the purpose of securing judicial approval of the contemplated settlement. ■ Arriving at the courthouse Garrett secured an order appointing attorney Richard P. Boyd, Jr. to consult with and advise Floyd Griffin- as provided by the Workmen’s • Compensation Act; LSA-R.S. 23 :- 1021 et seq. Judgment was thereafter rendered approving the compromise so made.
During February, 1953, Dr. King referred Griffin to Dr. Daniel M. Kingsley, an orthopedic surgeon of Alexandria, Louisiana, for the purpose of fitting a short leg brace to Griffin’s leg. It was explained by Dr: King that the reference was made necessary because such braces were not to be had in Harrisonburg. After examination of Griffin, Dr. Kingsley disagreed with the procedure suggested by Dr. King, being of the opinion that there was non-union of the broken ends of the tibia and on March 10, 1953, performed an open reduction which involved the use of bone and skin grafts. Later other operations were resorted to and at the time of trial June 22, 1954, plaintiff was conceded by defendant to be totally and permanently disabled.
As bearing upon the issue of fraud and misrepresentation, we make reference to material testimony, by W. B. Taliaferro, overseer for the W. S. Peck Estate, Harold L. Vandyke, Jr., Donald M. Garrett, Richard P. Boyd, Jr. and reference also is made to additional testimony by Dr. D. D. King.
W. B. Taliaferro testified that while passing the home of Floyd Griffin, he was called in by B. M. .Bethard, defendant’s local agent, who was accompanying Vandyke. He heard some of the discussion between Vandyke and Griffin relative to the settlement. He stated it was his understanding that Vandyke told Griffin that in order for the doctor to be paid, the settlement would have to be made. He advised Griffin not to accept the settlement. He did not remain during the entire time of the discussion between Vandyke and Griffin.
W. S. Peck, Jr., testified Vandyke and B. M. Bethard called upon him at the gin in Sicily Island, inquired of him as to where Griffin lived, and told him of the anticipated settlement: Griffin testified that Bethard and Vandyke called upon him and offered to settle for $200; that Mr. W. B.. Taliaferro came in and stayed for *485 a short while; that Vandyke told him.that unless the settlement was made the doctor would not be paid; that Vandyke finally offered to settle for $300, after which Griffin suggested they go and discuss it with Mr. Peck, but Vandyke told him he had already “saw him,” and that he, Griffin, then agreed to accept the settlement. Vandyke related that he called upon Dr. King who assured him there was good union of the fractured bone and that Floyd Griffin could return to his normal work within three months; that he also told this to Floyd Griffin and the latter said the doctor had told him his bone had knitted; that he could not remember stating to Griffin that the doctor was hollering for his money or that the doctor would not receive pay for his services unless the settlement was made; that he did tell Griffin that the ■ excess medical expense would be paid if the settlement was made; that he does not remember telling Griffin that he had already seen Mr. Peck, but this was a fact since he had already visited Peck that morning; and further, he testified that he made no misrepresentation and practiced no fraud in securing the consent of Griffin to the settlement. Donald M. Garrett stated that he went to Griffin’s home and they rode together to the court house on September 10th, during which time he discussed the compromise settlement to the extent of telling Griffin how much he would receive, that the sum agreed upon would be all he could get, and that it was necessary to secure the approval of the court. The attorney also said he secured an order from the judge appointing Richard P. Boyd, Jr., to represent Griffin, made his file available to Boyd, and left Boyd and Griffin discussing the matter. In his testimony Boyd gave the following account of his part in the transaction:
“A. As I recall, I discussed the matter with Floyd. I explained to Floyd that this petition and I believe, a release and receipt on the back, that when he signed that release and agreed to this settlement that it would be final and that the law provided that he would receive no more payments of
compensation. I explained he would receive no more weekly checks from the Insurance Company as a result of the injury he sustained to his leg. As to my exact words to him I cannot recall, but that was the gist of my explanation to Floyd, that on signing this and accepting the check, which I believe Mr. Garrett had for him, it says here $350.00, that upon accepting that and signing this release that that would be all he would get from the Insurance Company.”
Boyd further stated that he discussed the matter with Floyd Griffin in the presence of the judge.
Dr. King, in addition to the statements attributed to him heretofore, testified he fully informed Griffin of the condition of his leg upon each visitation but that he never on any occasion discussed with Griffin the question of his settlement. He related that he looked to Mr. Peck for payment for his services and that he did tell Mr. Peck his opinion as to the duration of Griffin’s disability. He said that he saw Vandyke on several occasions; and further, that he made no misrepresentation to anyone concerning Griffin’s injury or disability and that his prognosis as made in the report of July 29, 1952, represented his opinion.
The right of the parties to settle or compromise a claim arising under the Louisiana Workmen’s Compensation Act is permitted with certain limitations by LSA-R.S. 23:1271, 23:1272, 23:1273:
“§ 1271. * * *
“Whenever a bona fide dispute exists between the employee or his dependents on the one hand, and the employer or his insurer on the other, as to liability or coverage under this Chapter, whether the injuries complained of are compensable, the existence, nature, extent or duration of the injury or disability involved, the amount of compensation due the injured employee, or his dependents, or any other matter or thing affecting the *486 right of the claimant to recover compensation hereunder, the interested parties shall have the right to compromise and settle such bona fide dispute, including the manner in which compensation is to be paid, by agreement to be approved by the court having jurisdiction.
“§ 1272. * * *
“The agreement entered into between the employee or his dependents and the employer or his insurer, shall be presented to the court for its approval upon a joint petition verified by all parties thereto. The judge to whom the petition is presented shall, in every case, discuss the settlement and its terms with the employee or his dependents. When the employee or his dependents are not represented by a lawyer the judge shall appoint one to advise them relative to the proposed compromise settlement. A reasonable fee for such services shall be fixed by the court and when taxed as costs, it shall not exceed the sum of fifteen dollars. The judge shall require such proof of the dispute between the parties, and of the other facts set out in the joint petition as he thinks proper.
“§ 1273. * * *
“If the court believes the compromise agreed upon to be fair and equitable, and that it was entered into primarily to avoid or to end litigation, it shall approve the same, and immediately enter it as the judgment of the court, and the said judgment shall not thereafter be set aside except for fraud or misrepresentation made or induced by the employer or his insurer. The judge may, however, refuse to approve the settlement if he does not believe that it does substantial justice to the parties.”
Professor Wex S. Malone, in his work entitled “Louisiana Workmen's Compensation Law and Practice,” pages 509-512, makes the following pertinent observation relative to our jurisprudence involving the above referred to sections of the Workmen’s Compensation Act:
“Prior to 1942, decisions of the courts of appeal upholding compromise judgments based upon such differences were legion. However, in 1942 the supreme court announced in Puchner v. Employers’ Liability Assurance Corporation [199 So. 799] that section 17 of the Act should be construed merely as an ancillary to the provisions for lump sum settlements, and it even made the broad statement that compromise of a compensation claim was not authorized under the Act. However, it also suggested that it would uphold a compromise based upon a dispute as to whether the Act was applicable to the circumstances presented. It is clear that the court in the Puchner case was striking chiefly at compromises based upon speculation concerning the genuineness of the injury or its probable duration. For a time after this decision the courts of appeal invalidated all compromise agreements which were based upon uncertainty or dispute concerning the probable duration of the plaintiff’s disability. ¡
“The session of the legislature following the Puchner decision, amended section 17 of the Act so as to authorize all compromises based on any dispute concerning ‘the existence, nature, extent of duration of the injury or disability involved, the amount of compensation due the injured employee or his dependents, or any other matter or thing affecting the right of the claimant to recover compensation. * * *” Since this amendment the validity of compromises on these disputes has not been questioned.
“It should be noted, however, that it is not sufficient that the parties merely allege the existence of a dispute, when in fact there was none. A compromise agreement may be set *487 aside where both parties were apprized that the worker was permanently disabled and thereafter attempted to settle on "the basis of a temporary hurt of uncertain duration. Such an agreement will be treated as an attempted lump sum settlement at a prohibited discount.
******
“When the compromise agreement based upon a dispute has been approved by the court and translated into a judgment it cannot thereafter be set aside except for fraud or misrepresentation made or induced by the employer or his insurer. Ignorance of the complainant or the employer, or both, concerning the worker’s true condition is not sufficient to upset such an agreement. Similarly, the fact that the amount paid is trivial in light of the worker’s ultimate physical condition will not invalidate the compromise. However, where fraud inducing compromise is alleged in the suit for additional compensation the court will usually overrule an exception of no cause of action and permit a trial of the issue on its merits.”
In Racine v. Campti Lumber Co., La.App., 1949, 43 So.2d 288, 290, Judge Talia-ferro commented:
“Since the passage of Act No. 96 of 1942, controversies between employer and employee that involve the extent and possible duration of injuries may be compromised if the controversy be bona fide, and strict conformity to the requirements of the act be had; and when this has been done, such a compromise (after being approved by the proper judge) has the same force and effect as judgments in other character of cases. It may not be set aside save upon proof of fraud, wilful misrepresentation of true material facts, and for other causes that affect the validity of contracts generally, otherwise legal and binding.”
Reverting to the evidence adduced upon the trial of this case, we must admit that we are favorably impressed as to the credibility of the testimony of Dr. King and Vandyke. We can in nowise infer wilful misrepresentation and deliberate deceit by either one of these parties for the purpose of inducing plaintiff to enter into an inadequate settlement and with knowledge that the employee was permanently disabled at the time of the confection of the settlement. We recognize, of course, that if the defendant was on September 1 or September 10, 1952, attempting to make a settlement with knowledge-that'the duration of Griffin’s disability was indefinite, and therefore, under the Workmen’s Compensation Act must be considered of a permanent nature, such a settlement under those circumstances would have to be considered not as a compromise but as an attempt to effectuate a lump sum settlement at a greater discount than permitted by the law. In such instance the transaction could be judicially stamped with invalidity. We do not think that such a condition existed with reference to the instant transaction. The legality of the settlement approved September 10, 1952, must be tested under the light of circumstances existing at the time and not those which arose after the judgment of compromise was obtained. This test was approved in Puchner v. Employers’ Liability Assur. Corporation, La.App., 1941, 199 So. 799, annulled on other grounds, 198 La. 921, 5 So.2d 288.
It is our considered opinion that on July 29, 1952, Dr. King truly believed at that time that Griffin would have the normal recovery reported by him. And when the parties negotiated the settlement there did exist a bona fide dispute as to the duration of the disability, because they all acted in the belief that Griffin was temporarily disabled only and could return to his normal employment within several months from July 29, 1952. Griffin settled his case by taking compensation equivalent to forty weeks at the rate of $12.51 per week, the weekly rate of compensation to *488 It is our considered opinion that on July 29, 1952, Dr. King truly believed at that time that Griffin would have the normal recovery reported by him. And when the parties negotiated the settlement there did exist a bona fide dispute as to the duration of the disability, because they all acted in the belief that Griffin was temporarily disabled only and could return to his normal employment within several months from July 29, 1952. Griffin settled his case by taking compensation equivalent to forty weeks at the rate of $12.51 per week, the weekly rate of compensation to
We cannot agree with the argument the statements by Vandyke to Griffin constituted misrepresentations which induced the worker to agree to the settlement. We are certain that Griffin looked to Mr. Peck to take care of his doctor’s bill and we are equally of the opinion that Griffin had ample opportunity to consult with Mr. Peck between September 1st and September 10th and that had he done so, and Mr. Peck had disapproved of the settlement, -plaintiff would never have signed the joint petition on September 10, 1952. We, therefore, reach the conclusion that plaintiff has not made out the charges of fraud and misrepresentation as alleged.
In brief of counsel it intimated that Boyd and the judge a quo failed to properly advise Griffin of his legal rights and the court did not exact proof in support of the joint petition for compromise, all as required by the Workmen’s Compensation Act. Such argument is untenable in view of the testimony of Boyd and the aver-ments contained in the joint petition, the allegations in which were over the admitted signature of Floyd Griffin. A further contention is made that advantage was taken of Griffin, an ignorant colored laborer. But this argument is without merit and is repudiated in the quotation from Professor Malone, supra. However, it is a matter of common knowledge that all people who cannot read and write are not ignorant. Many are fully cognizant of their rights. This may have been true with respect to Floyd Griffin who had previously participated in a compromise settlement under the Workmen’s' Compensation Act.
As a result of our conclusions as here-inabove set forth,'the judgment from which appealed is annulled and set aside and plaintiff’s. demands are rejected.