AYRES, Judge.
Plaintiff instituted this action against his former employer, the State of. Louisiana, through the Department of Highways, and its compensation insurer, Maryland Casualty Company, to annul a judgment approving a workmen’s compensation settlement and then to recover compensation for the maximum statutory benefits as for total and permanent disability and for penalties and attorney’s fees provided for in the event of arbitrary and capricious refusal of the employer and its insurer to pay compensation, less the sum of $330 paid in the alleged settlement.
It is conceded that plaintiff is presently totally and permanently disabled to do the same work or work of a similar character as he was doing when he was allegedly injured. For resolution are two primary issues. The first is the question of causal connection between plaintiff’s present condition and the injuries allegedly sustained by plaintiff while in the employ of the Department of Highways of the State of Louisiana, and the second is, if such causal connection is established, as to the validity of the settlement entered into and approved by the court April 6, 1956.
A brief résumé of the facts is indispensable to a proper understanding of the issues involved. Plaintiff was employed by the Department of Highways as a night watchman and in this capacity serviced trucks with gasoline and performed incidental and similar tasks While so employed he claims to have sustained a hernia on one side in 1952 and on the other side in 1953. Notwithstanding these hernias he continued in his employment. On December 10, 1954, he claims, while night watching on a job in DeSoto Parish, he stumbled over a stump in the darkness of the night and fell, striking his stomach on the stump. This accident, he says, aggravated the hernias he had previously sustained to such an extent that he sought medical aid, though continuing to work until January *273 24, 1955, when he was hospitalized by Dr. S. W. Boyce, who, the following day, repaired his hernias by surgical operation. Plaintiff’s hospitalization continued for about a week following the operation when he was fitted with an abdominal belt and released. In the meantime, plaintiff continued under the care and attention of Dr. Boyce, who, from an examination of April 1, 1955, reported that plaintiff had fully recovered and was able to resume his work. Nevertheless, plaintiff was formally discharged from his employment April 14, 1955.
During May, 1955, plaintiff secured employment with H. C. Price Company, a construction concern of Hazelhurst, Mississippi, to do work of a character similar to that he had formerly performed for the Department of Highways in Louisiana. While so employed plaintiff claims to have suffered another accident under date of July 19, 1955, while straightening a cable being pulled by a vehicle in connection with the aforesaid construction work, when he slipped and fell, straddling a log. At the request of his employer, plaintiff was examined the following day by Dr. J. C. Blaine of Hazelhurst, Mississippi. Plaintiff claimed that in that accident he received skin injuries to his scrotum but later produced a small splinter which he claimed to have been retrieved from the wound. Dr. Blaine on his examination found bleeding from two points on the left side of the scrotum, one of which he said could be interpreted as a small punctured wound. Additionally, he found a swelling in the area of the right inguinal region approximately two inches wide and three inches long, which he characterized as a recurrent hernia, which, in his opinion, antedated the accident of July 19, 1955. The wound on the scrotum was located some three or four inches from the site of the inguinal hernia which had been repaired by Dr. Boyce.
By operation of August 4, 1955, Dr. Blaine repaired the recurrent hernia as found by him in his examination of July 20. This hernia was slightly above the suture line of the right inguinal hernia which had been repaired by Dr. Boyce. This suture line was found intact and in proper order. According to Dr. Blaine, the former operation was expertly and successfully performed.
The operation performed by Dr. Blaine was not so successful. The tissues did not heal and drainage continued as if from an open wound, even to the date of trial. Nevertheless, plaintiff, represented by an attorney of Mississippi, on October 10, 1955, entered into a compromise settlement of his claims, predicated upon said injuries. The settlement, which was duly approved, was for the sum of $450 in addition to $250 for medical expenses. In this connection, it may be stated, however, that, under the law of the State of Mississippi, the aggravation of a pre-existing hernia is not compensable.
Plaintiff claims that the protrusion referred to by Dr. Blaine — and he and his wife so testified — became manifested only a few days following the removal of the abdominal belt as fitted by Dr. Boyce, which he had worn for four months or more. Other than plaintiff and his wife, only two persons saw this protrusion until seen by Dr. Blaine. Neither of these persons was produced as a witness because, according to plaintiff, they were ill on the day of trial, nor was their testimony otherwise obtained. This protrusion was never called to Dr. Boyce’s attention although plaintiff remained in the vicinity for some weeks, and after he returned from Mississippi he was again examined by the Doctor. On neither of the occasions of plaintiff’s employment was he given a physical examination.
Plaintiff’s testimony, in view of its many inconsistencies, is not of such character to be convincing; we could not have such abiding faith in its correctness as to say that we are convinced by a preponderance of the evidence that such protrusion manifested itself shortly after the removal of the *274 abdominal belt or that it was produced or brought about as a result of the accident of December 10, 1954, and/or from the operative procedure pursued by Dr. Boyce.
Neither does the medical testimony preponderate in plaintiff’s favor. Dr. Blaine was of the opinion that the hernia appearing above the suture line of the former operation occurred in that area because of a weakening of the inguinal tissue. He could not, however, determine the time this hernia occurred but was of the opinion, from the nature of the accident of July 19, 1955, that it did not result therefrom but antedated that accident. It was Dr. Boyce’s opinion there was no breaking down of the surgical repair done by him and there was not necessarily any connection between the hernia and the operation performed in its repair and a subsequent one classified as a recurrent hernia. Dr. James H. Eddy, Jr., was of the opinion that the surgical repair of a hernia did not weaken the adjoining tissue and there was no connection between a so-called recurrent hernia and the first hernia or its repair. Such recurrence, he says, is almost never the exact type in the’ same location as the original hernia. The first hernia is usually an indirect hernia with a congenital background and the recurrence is most probably a direct hernia and occurs in a different location because of the greater strength of the formerly repaired tissue and area.
It was stipulated that Dr. Paul Abramson, summonsed as a witness, would testify substantially as Dr. Eddy.
To the contrary, however, was the opinion ■of Dr. Wallace Brown, who examined plaintiff after his return from Mississippi, particularly if there had been no other injury or strain of any sort in the interim. The Doctor’s testimony is thus predicated upon assumptions of facts which have, not been established by the record. The evidence does not establish that there was no other accident or strain which may have produced the recurrent hernia. Only plaintiff’s testimony is to that effect. However, the Doctor does state that a subsequent hernia appearing above the suture line of the previous hernia came from the congenital weakness of the tissue itself and that the condition as found in July of 1955, even if antedating the accident of that month, was not necessarily traceable to the original hernia or its surgical repair.
It was the conclusion of our learned bi'other of the District Court that plaintiff’s evidence was of an unconvincing character. In this we concur. It was particularly noted plaintiff was not corroborated as to the occurrence of the accident of December 10, 1954. Neither was he corroborated as to the appearence of the protuberance in the hernial area soon after the compromise settlement. The action pursued in Mississippi does not support the position presently asserted by plaintiff- — a claim was made in Mississippi that the recurrence of the hernia resulted from an injury received in that State.
As concerns the question of casual connection between the accident of December 10, 1954, including the surgical repair therefor, and plaintiff’s present condition, the evidence, at best, is very conflicting. The only expert testimony tending to support plaintiff’s position is that given by Dr. Wallace Brown, 'from a careful study of which it could not be concluded that he specifically testified that the subsequent protrusion was produced or resulted from the aforesaid previous injury of plaintiff or was super-induced by the operation.
Neither do we find merit in plaintiff’s second contention. He urges that the settlement was null and void' in the absence of any dispute between him and his employer or his employer’s insurer that would warrant or justify a settlement. The facts established by the record do not support this contention.' The evidence leaves no doubt of the existence of a dispute as to the employer’s and insurer’s liability. The record is replete with proof of a dispute as to even the occurrence of the accident of December *275 10, 1954, in which plaintiff claims to have sustained injuries necessitating the operation of January 25, 1955. Neither does the record leave any doubt of a dispute as to the extent and duration of plaintiff’s disability following the aforesaid operation. These disputes were bona fide. .
Whenever a bona fide dispute exists, between the employee and the employer or his insurer as to liability or as to the existence, nature, extent or duration of the employee’s injury or disability or as to the amount of compensation due, as well as to any other matter affecting the right of the employee to recover compensation, the employee, the employer and the compensation insurance carrier have the right to settle and compromise such bona fide dispute with the approval of a court of competent jurisdiction. LSA-R.S. 23:1271. In this instance, there is no contention made that all the formalities prescribed by LSA-R.S. 23 :- 1272 as prerequisite to a valid settlement were not complied with. When a compromise has been so entered into and approved by the court, the judgment is binding upon the parties and shall not thereafter be set aside except for fraud or misrepresentation made or induced by the employer or his insurer. LSA-R.S. 23:1273. See Griffin v. Coal Operators Casualty Co., La.App., 84 So.2d 481, and Jenkins v. Pemberton, La.App., 87 So.2d 775.
Plaintiff finally complains that the settlement was induced by fraud in that he was led to believe he would be permitted to return to his former employment, whereas, shortly after the settlement he was given notice of his discharge. The record not only fails to support his contention in this regard but disproves it.
For these reasons, the conclusion necessarily follows that plaintiff has not established by a preponderance of the evidence a causal connection between his present disability and the accidental injuries allegedly sustained while in the employ of the Department of Highways of the State of Louisiana. Such proof is an essential prerequisite to his rights and, without it, he could, in no event, recover. Neither has plaintiff sustained his burden of proof that would warrant or justify the annulment of the compensation settlement or the setting aside of the judgment approving the same because of fraud.
Therefore, we find no manifest error in the judgment appealed, which is, accordingly, amrmed.
Affirmed.