AYRES, Judge.
By this action plaintiff seeks to recover workmen’s compensation for total and permanent disability. The basis of the claim is an alleged recurrent traumatic inguinal hernia. The trial court concluded that no causal relationship was established between an accident sustained by plaintiff July 5, 1955, and the occurrence of the hernia in 1957. From a judgment rejecting his demands, plaintiff has appealed.
The facts material to the issue presented for resolution may be briefly stated. Defendant’s assured, Wright Waterproofing Company, was engaged in construction work in the completion of the Beck Building in the City of Shreveport. Plaintiff, a common laborer in the service of this employer, fell to the floor while carrying waterproofing materials on the eighteenth floor of the building. This accident, and the possibility that plaintiff had sustained injuries, was reported to the foreman immediately following its occurrence. On reporting for work the next day, on plaintiff’s again making complaints, he was referred by the foreman to Dr. E. W. Harris, Sr., who, after several days, and on a thorough examination, discovered plaintiff had sustained a left inguinal hernia. Surgical repair of the hernia was made July 20, 1955, and plaintiff discharged September 20, 1955, as fully recovered and able to resume the duties of his employment. Plaintiff was paid compensation covering the period of his convalescence of ten and six-sevenths weeks.
Following recovery, plaintiff engaged in various activities. However, for a period of eight weeks, he drew social security. He then secured, for a brief period, employment cleaning streets in Bossier City. Eventually, in 1956, he secured employment with Campbell Construction Company, then engaged in the widening of Kings Highway in the City of Shreveport. During the approximate eight months he was thus employed, he did heavy manual labor such as is usually incidental to highway and street construction. His duties required the use of picks and shovels, the lifting and loading of heavy materials, including concrete removed from the existing construction. This employment extended far into 1957, during which time plaintiff performed his duties efficiently and satisfactorily and without complaints. Following completion of this project, plaintiff continued in the em *790 ploy of the Campbell Construction Company on other projects at the Freestate Shopping Center. Only by completion of the work, was his employment terminated.
Plaintiff’s testimony is to the effect that he first noted the hernia now complained of while working for Campbell Construction Company in 1957, although he had suffered pain in his groin since the operation. This action was instituted April 12, 19S6, or almost a year after the accident sustained by plaintiff while employed in the construction of the Beck Building, and a year or more before the present hernia occurred or manifested itself, or before plaintiff made its discovery.
It may be noted that the pleadings as originally confected recited that plaintiff sustained injuries in the sacrococcygeal and sacroiliac regions of the back, a displaced lumbar disc, and a sprain to the lumbar muscles, as well as “a hernia.” By stipulation at the beginning of trial, all claims were abandoned by plaintiff except as to the hernia which, as stated, only became manifest approximately a year or more following the filing of this action.
The question of causal relationship between the accident of July S, 1955, and the hernia manifested in 1957 presents, for determination, a purely factual issue. In resolving issues of this character, certain well-established principles must be borne in mind. For instance, it is well settled in the jurisprudence of this State that claimants in compensation cases, as are plaintiffs in civil actions generally, carry the burden of proof. They are required, in order to recover, to establish their claims to a legal certainty by a reasonable preponderance of the evidence. Card v. Southern Builders, Inc., La.App.1960, 117 So.2d 675; Green v. Heard Motor Co., 224 La. 1077, 1078, 71 So.2d 849; Roberts v. M. S. Carroll Co., La.App.1953, 68 So.2d 689. The question presented is one to be determined primarily from the medical testimony. Hence,' a brief review of the testimony of the medical experts must be indulged.
Plaintiff was hospitalized July 18, 1955, in preparation for the operation which followed, by D,r. Harris, July 20, 1955. Plaintiff was hospitalized until August 20, 1955, when he was released. Dr. Harris testified that the operation was a success; that plaintiff’s convalescence was normal and uneventful; and that, on plaintiff’s release from the hospital, the hernia was cured and the incision well healed. These findings were confirmed when plaintiff returned for a checkup September 5, 1955. No complaints of pain or discomfort, according to the doctor’s testimony, were made by plaintiff to him on either of these occasions.
Such were also the findings and conclusions of Dr. T. M. Oxford when, on October 11, 1955, he examined plaintiff and found the operation intact, successfully performed, and well healed.
Dr. G. H. Cassity, a general practitioner who examined plaintiff for a supposed back injury September 28, 1955, in testifying for plaintiff, gave his opinion that the surgical repair of the hernia was “a good job and holding all right,” although plaintiff complained of some pain in the operative scar. That plaintiff may have continued to suffer some discomfort in the operative scar is a matter of no conseqeunce as, according to the consensus of the medical experts, this is usual and may be expected following such operations. Four years later, October 13, 1959, Dr. Cassity again examined plaintiff and, in referring to that examination, stated:
“The result of this examination revealed the following: The left inguinal hernia, which had been repaired a short time before my first examination, and which showed no sign of any recurrence, now on October 13, 1959, had returned, and had become a complete indirect inguinal hernia.”
Dr. C. H. Potts, a general practitioner, also examined plaintiff November 25, 1955. Dr. Potts testified as to the good results of the hernioplasty and that the hernia was thoroughly and competently repaired and *791 holding. The doctor’s finding was further confirmed on a subsequent examination in April, 1956. However, he said that on examining plaintiff in October, 1959, there was a recurrence of the hernia — at least, at the same place. A subsequent examination of March 29, 1960, revealed that the hernia had only increased in size. The doctor’s belief was that the old hernia had “broken down,” that is, that the issues had separated and opened, and that the hernia had thus recurred.
A recurrent hernia was defined in the medical testimony as a hernia that had returned in the sense that the fascia planes of the tissues had not remained sutured and healed in place or had later broken down. The consensus of the medical experts is that there may be a recurrence of hernias following a hernioplasty; that the percentage of such recurrences is possibly five to ten percent. This percentage of recurrence is generally not attributable to the fault of anyone or due to the improper repair of the original hernia. Recurrences, according to the consensus of the medical experts, are usually manifested soon after the operation, even on the removal of the bandages, or at least within two or three months thereafter.
Dr. James H. Eddy, Jr., expressed the opinion that if a competent examiner, by examinations in November and January, following a hernioplasty in July, found no recurrence, a subsequent recurrence must be due to and caused by some independent, intervening cause. It was inconceivable to him that a weakness existing for two years could suddenly become apparent. The testimony of Dr. Eddy is that the recurring hernia claimed in this case could not possibly have resulted from the original hernia or from its improper repair, nor could its recurrence have any connection with the original hernia because of the lapse of time between the original repair and the recurrence.
Plaintiff cites and relies upon the case of Purdy v. Brown Paper Mill Co., La.App 1945, 24 So.2d 8. The instant case is distinguishable upon the facts. In the case cited, Purdy was operated upon for a hernia. He never recovered therefrom. He was never able to return to work and, within the space of a few months following the operation, a recurrent hernia developed. To the contrary, in the instant case, plaintiff did recover from the operation; he did return to hard manual labor; he performed such labor without complaint, efficiently and satisfactorily; and the recurrence, if it may be properly so classified, occurred almost two years after the operation for the repair of the original hernia. While the defense is not predicated on the ground that plaintiff has suffered another accident, the happening of which, if it did, defendant had no knowledge or information, the testimony leaves no doubt that for a long period of time plaintiff engaged in strenuous activity, doing the hardest and most strenuous type of manual labor in .road and street construction.
Nor do we find applicable or controlling, the decision in Crawford v. Tampa Inter-Ocean S. S. Co., La.App.1933, 150 So. 875, for, in that case, the court found that the hernia recurred within a short time after the original operation.
Defendant cites the opinion of this court in Burroughs v. Maryland Casualty Company, La.App. 1958, 102 So.2d 271, as supporting the decision of the district court in this case. Plaintiff endeavors to distinguish that from the instant case because of certain factual differences. There are, of course, factual differences in the two cases, as it would be a rare occurrence indeed for two cases to produce identical facts. The medical testimony, however, in the Burroughs case, supplied by three physicians, one of whom was Dr. Eddy, was the same as that of Drs. Harris and Eddy in this case, namely, that there is not necessarily any connection between a hernia and the operative procedure in its repair, and a subsequent hernia classified as a recurring hernia; nor does the surgical repair of the hernia weaken the adjoining tissues. In *792 the Burroughs case, plaintiff contended and testified that he had no subsequent accident which might have brought about the recurring hernia, just as plaintiff testified in the instant case. In the instant case, however, the evidence discloses positively that the plaintiff did do hard manual labor, as detailed hereinabove, for a period of eight months or more during 1956-1957, and that it was during the period of this employment that the hernia developed.
 We concluded, in the Burroughs case, that plaintiff had not established, by a preponderance of the evidence, a causal connection between the accidental injuries allegedly sustained and his disability. That is our conclusion here. Such proof is an essential prerequisite to the establishment of his rights and, without it, he can in no event recover.
The judgment appealed is, therefore, affirmed at appellant’s cost.
Affirmed.